# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

SANTIAGO PADILLA and MURRAY L. SHAMES, individually and on behalf of themselves and all others similarly situated,

   Plaintiffs,

v.

PORSCHE CARS NORTH AMERICA, INC., a Delaware corporation,

   Defendant.

Case No. 1:18-cv-24988-FAM

## PORSCHE CARS NORTH AMERICA, INC.'S MOTION TO DISMISS

Fredrick H.L. McClure, Esq.
 *fredrick.mcclure@dlapiper.com*
**DLA Piper LLP (US)**
200 South Biscayne Boulevard
Miami, Florida 33131-5341
Telephone: 813.222.5908
Facsimile: 813.371.1111

**Of Counsel:**

William F. Kiniry, Jr.
 *william.kiniry@dlapiper.com*
 (*pro hac vice* application pending)
Matthew A. Goldberg
 *matthew.goldberg@dlapiper.com*
 (*pro hac vice* application pending)
**DLA Piper LLP (US)**
1650 Market Street, Suite 5000
Philadelphia, PA 19103-7300
Telephone: 215.656.3300
Facsimile: 215.656.3301

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.    INTRODUCTION ............................................................................................1

II.    BACKGROUND ............................................................................................3

III.    ARGUMENT ............................................................................................4

    A.    Plaintiffs' FDUTPA claim should be dismissed with prejudice. ...........................4

        1.    Plaintiffs' FDUTPA claim is time-barred. ....................................................4

        2.    In any event, Plaintiffs have not adequately alleged the essential elements of a FDUTPA claim. .................................................6

            a.    Plaintiffs do not allege facts showing that PCNA acted deceptively. .........................................................6

            b.    Plaintiffs do not allege facts showing PCNA engaged in any sort of unfair practice. ..............................................10

            c.    Plaintiffs have not pleaded facts to support a claim for actual damages. .........................................................10

    B.    Plaintiff's implied warranty claim should be dismissed with prejudice. ...............11

        1.    Plaintiffs lack privity with PCNA. ...........................................................11

        2.    Padilla does not allege that he gave PCNA adequate pre-suit notice of his implied warranty claim. ..................................................11

        3.    Plaintiffs' implied warranty claim also fails because they have not alleged facts showing whether their used cars were purchased "as is." ....12

    C.    Injunctive relief is not available to Plaintiffs. ........................................12

    D.    The forms of relief requested in Count III should be dismissed as a matter of statutory interpretation, as preempted, or pursuant to the doctrine of primary jurisdiction. ...................................................................14

IV.    CONCLUSION....................................................................................17

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*,
    300 U.S. 227 (1937)..................................................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................4, 8

*Ayres v. Gen. Motors Corp.*,
    234 F.3d 514 (11th Cir. 2000) ............................................................................14, 15

*Baba v. Hewlett-Packard Co.*,
    No. 09-5946, 2011 WL 317650 (N.D. Cal. Jan. 28, 2011)........................................8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................4, 8

*In re Bridgestone/Firestone Inc. Tires Prods. Liab. Litig.*,
    153 F. Supp. 2d 935 (S.D. Ind. 2001) ...............................................................15, 16

*Buckman Co. v. Plaintiffs' Legal Comm.*,
    531 U.S. 341 (2001)..............................................................................................4, 15

*Bussian v. DaimlerChrysler Corp.*,
    411 F. Supp. 2d 614 (M.D.N.C. 2005) ..................................................................16

*Butler v. Porsche Cars N. Am., Inc.*,
    No. 16-2042, 2017 WL 1398316 (N.D. Cal. Apr. 19, 2017)....................................7

*Chicago & N. W. Transp. Co. v. Kalo Brick & Tile Co.*,
    450 U.S. 311 (1981)................................................................................................15

*Christ v. Beneficial Corp.*,
    547 F.3d 1292 (11th Cir. 2008) ........................................................................13, 14

*Coker v. DaimlerChrysler Corp.*,
    No. 01-CVS-1264, 2004 WL 32676 (N.C. Super. Ct. Jan. 5, 2004) ......................16

*Cox House Moving, Inc. v. Ford Motor Co.*,
    No. 06-1218, 2006 WL 2303182 (D.S.C. Aug. 8, 2006)........................................15

*Daniel v. Ford Motor Co.*,
    806 F.3d 1217 (9th Cir. 2015) .................................................................................7

*Domond v. Peoplenetwork APS*,
   No. 16-24026, 2017 WL 5642450 (S.D. Fla. June 16, 2017) (Moreno, J.) ..........................3, 9

*Far E. Conf. v. United States*,
   342 U.S. 570 (1952) ...............................................................................................................16

*H & H Laundry Corp. of Orlando v. TheLaundryList.com, Inc.*,
   No. 10-938, 2010 WL 3119896 (M.D. Fla. Aug. 6, 2010) .....................................................12

*Herazo v. Whole Foods Mkt., Inc.*,
   No. 14-61909, 2015 WL 4514510 (S.D. Fla. July 24, 2015) (Moreno, J.).........................2, 12

*Heuer v. Nissan N. Am., Inc.*,
   No. 17-60018, 2017 WL 3475063 (S.D. Fla. Aug. 11, 2017) ..................................................5

*Hummel v. Tamko Bldg. Prods., Inc.*,
   No. 15-910, 2016 WL 7340301 (M.D. Fla. Mar. 28, 2016) .....................................................6

*Huntings v. Texaco, Inc.*,
   29 F.3d 1480 (11th Cir. 1994) .................................................................................................4

*Kent v. Hewlett-Packard Co.*,
   No. 09-5341, 2010 WL 2681767 (N.D. Cal. July 6, 2010) ......................................................9

*Koski v. Carrier Corp.*,
   No. 16-25372, 2017 WL 9324356 (S.D. Fla. Aug. 18, 2017) ..............................................4, 5

*Lilly v. Ford Motor Co.*,
   No. 00-7372, 2002 WL 84603 (N.D. Ill. Jan. 22, 2002) ........................................................16

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ...............................................................................................................12

*In re Managed Care Litig.*,
   150 F. Supp. 2d 1330 (S.D. Fla. 2001) ....................................................................................7

*Marine Ventures, Ltd. v. Brunswick Corp.*,
   No. 08-22418, 2010 WL 528477 (S.D. Fla. Feb. 11, 2000) (Moreno, J.) ....................1, 10, 11

*Marlborough Holdings Grp., Ltd. v. Azimut-Benetti, Spa, Platinum Yacht
   Collection No. Two, Inc.*,
   505 F. App'x 899 (11th Cir. 2013) ........................................................................................4, 5

*Marty v. Anheuser-Busch Cos., LLC*,
   43 F. Supp. 3d 1333 (S.D. Fla. 2014) .....................................................................................12

*Masker v. Smith*,
   405 So.2d 432 (Fla. 5th Dist. Ct. App. 1981) .........................................................................12

ii

*McDonald v. S. Farm Bureau Life Ins. Co.*,
    291 F.3d 718 (11th Cir. 2002) .........................................................................................15

*Mesa v. BMW of N. Am., LLC*,
    904 So.2d 450 (Fla. 3d Dist. Ct. App. 2005) ..........................................................11

*Nader v. Allegheny Airlines, Inc.*,
    426 U.S. 290 (1976) ....................................................................................................16

*Namovicz v. Cooper Tire & Rubber Co.*,
    225 F. Supp. 2d 582 (D. Md. 2001) .........................................................................16

*Next Century Commc'ns Corp. v. Ellis*,
    318 F.3d 1023 (11th Cir. 2003) ...................................................................................6

*Oestreicher v. Alienware Corp.*,
    544 F. Supp. 2d 964 (N.D. Cal. 2008) ......................................................................8

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.*,
    842 So.2d 773 (Fla. 2003).....................................................................................1, 10

*Porsche Cars N. Am., Inc. v. Diamond*,
    140 So.3d 1090 (Fla. 3d Dist. Ct. App. 2014) .........................................................10

*Raie v. Cheminova, Inc.*,
    336 F.3d 1278 (11th Cir. 2003) ...................................................................................5

*Reiter v. Cooper*,
    507 U.S. 258 (1993)....................................................................................................16

*Resnick v. Hyundai Motor Am., Inc.*,
    No. 16-593, 2017 WL 6549931 (C.D. Cal. Aug. 21, 2017) ......................................8

*Rodriguez v. Recovery Performance & Marine, LLC*,
    38 So.3d 178 (Fla. 3d Dist. Ct. App. 2010) ............................................................10

*Sanchez-Farge v. Mukasey*,
    No. 08-60644, 2008 WL 2096375 (S.D. Fla. May 13, 2008).................................13

*Sanchez-Knutson v. Ford Motor Co.*,
    310 F.R.D. 529 (S.D. Fla. 2015)...............................................................................10

*Silvas v. Gen. Motors*,
    No. 14-89, 2014 WL 1572590 (S.D. Tex. Apr. 17, 2014)......................................16

*Speier-Roche v. Volkswagen Grp. of Am., Inc.*,
    No. 14-20107, 2014 WL 1745050 (S.D. Fla. Apr. 30, 2014) (Moreno, J.) .............5

*In re Takata Airbags Prods. Liab. Litig.*,
    193 F. Supp. 3d 1324 (S.D. Fla. 2016) (Moreno, J.) ...........................................................11

*Tershakovec v. Ford Motor Co.*,
    No. 17-21087, 2018 WL 3405245 (S.D. Fla. July 12, 2018) (Moreno, J.).........................2, 11

*Texas & Pac. R. Co. v. Abilene Cotton Oil Co.*,
    204 U.S. 426 (1907)..........................................................................................................16

*Thompson v. Proctor & Gamble Co*,
    No. 18-60107, 2018 WL 5113052 (S.D. Fla. Oct. 19, 2018) ...............................................6, 7

*Townsend v. Crews*,
    No. 14-2412, 2014 WL 6979646 (S.D. Fla. Dec. 9, 2014) (Moreno, J.)...................................3

*United States v. Air Fla., Inc.*,
    534 F. Supp. 17 (S.D. Fla. 1982) ......................................................................................4, 11

*Wilson v. Volkswagen Grp. of Am., Inc.*,
    No. 17-23033, 2018 WL 4623539 (S.D. Fla. Sept. 26, 2018) ..................................................8

*Wiseberg v. Toyota Motor Corp.*,
    No. 11-3776, 2012 WL 1108542 (D.N.J. Mar. 30, 2012) ........................................................9

## Statutes

28 U.S.C. § 2201 .................................................................................................... *passim*

49 U.S.C. § 30101 ............................................................................................................14

49 U.S.C. § 30118.................................................................................................14, 15, 16

49 U.S.C. § 30120 ........................................................................................................15, 16

Fla. Stat. § 95.11(3)(f).........................................................................................................1, 4

Fla. Stat. § 501.201 ...............................................................................................................1

Fla. Stat. § 501.222(a) .........................................................................................................10

Fla. Stat. § 672.316(a)(2) ...................................................................................................2, 12

Fla. Stat. § 672.607(3)(a) ....................................................................................................2, 11

**Other Authorities**

16 C.F.R. § 455.2 ................................................................................................2, 3, 7, 12

16 C.F.R. § 455.3 ......................................................................................................3, 7

Black's Law Dictionary (10th ed. 2014) ...............................................................13

Fed. R. Civ. P. 8 ...........................................................................................................1

Fed. R. Civ. P. 12(b) ....................................................................................................1

Local Civ. R. 7.1 ...........................................................................................................1

Defendant, Porsche Cars North America, Inc. ("PCNA"), through the undersigned counsel, and pursuant to Federal Rules of Civil Procedure 8(a), 12(b)(1), and 12(b)(6), and Local Civil Rule 7.1, hereby moves the Court for an Order dismissing Plaintiffs' Complaint. In support of its motion, PCNA relies on the incorporated memorandum of law, and the contemporaneously filed Declaration of Fredrick H.L. McClure and Request for Judicial Notice.

## I.    INTRODUCTION

Despite the fact that Plaintiffs, Santiago Padilla and Murray Shames, bought ***used*** cars, and despite the fact that they bought those used cars from entities other than PCNA, they bring this suit against PCNA (which played no role whatsoever in their purchase transactions). Each Plaintiff alleges that PCNA is somehow responsible for an alleged coolant system defect in his used car, which did not manifest until many years after it was sold (as a new car) to the first retail buyer. They seek monetary damages under Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* (the "FDUTPA"), and for breach of implied warranty. They also seek declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.

All of those claims should each be dismissed with prejudice, for the following reasons:

- **The FDUTPA claim is untimely.** Plaintiffs filed the Complaint in November 2018, more than four years after buying their respective cars. Thus, their FDUTPA claim is facially time-barred. FLA. STAT. § 95.11(3)(f).

- **Plaintiffs have not plausibly alleged that PCNA committed a deceptive or unfair act.** Viable FDUTPA claims rest on affirmative statements, omissions, or "unfair practices" that both offend established public policy and are "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So.2d 773, 777 (Fla. 2003). Plaintiffs plead no such facts. The affirmative statements they attribute to PCNA are non-actionable puffery, and they plead nothing to show PCNA knew of but failed to disclose a defect.

- **Plaintiffs plead no facts to support a claim of actual damage.** Plaintiffs allege they suffered damages as a result of their out-of-pocket repair costs, but such damages are not recoverable under the FDUTPA. Clear *Marine Ventures, Ltd. v. Brunswick Corp.*, No. 08-22418, 2010 WL 528477, at *3 (S.D. Fla. Feb. 11, 2000) (Moreno, J.). And they have pleaded no facts to support their conclusory assertion that the supposed defect actually diminished the value of their used cars.

- **Plaintiffs are not in privity with PCNA and cannot sustain an implied warranty claim.** Under Florida law, plaintiffs cannot recover economic losses for breach of an implied warranty in the absence of privity with the defendant. *See, e.g.*, *Tershakovec v. Ford Motor Co.*, No. 17-21087, 2018 WL 3405245, at *10 (S.D. Fla. July 12, 2018) (Moreno, J.). But that is precisely what Plaintiffs attempt here, in spite of their admission that they bought used cars from sellers other than PCNA.

- **Plaintiffs have not pleaded the other facts necessary to support an implied warranty claim.** Padilla did not provide pre-suit notice to PCNA, in violation of Florida law. *See* FLA. STAT. § 672.607(3)(a). Neither Plaintiff has pleaded whether he purchased his used car "as is," which would have negated any potentially applicable implied warranties, *see* FLA. STAT. § 672.316(a)(2), or subject to some sort of written warranty—the only options recognized by federal law. 16 C.F.R. § 455.2. These pleading failures warrant dismissal of the implied warranty claim.

- **Injunctive relief is unavailable to Plaintiffs.** Plaintiffs lack Article III standing to seek injunctive relief because they complain only of past injuries, not present or potential future harm. *Herazo v. Whole Foods Mkt., Inc.*, No. 14-61909, 2015 WL 4514510, at *3 (S.D. Fla. July 24, 2015) (Moreno, J.). Moreover, they simply have no right to it. As its name suggests, the Declaratory Judgment Act does not provide an independent basis for anything other than "declaratory" relief, and Plaintiffs' failure to plead cognizable FDUTPA or implied warranty claims dooms their request for any sort of relief, injunctive or otherwise.

- **In any event, Plaintiffs' requests for declaratory and injunctive relief should be heard, if at all, only by the federal agency tasked with overseeing vehicle and highway safety.** Plaintiffs ask for a declaration of a defect and the imposition of a vehicle recall process. But when Congress enacted the National Traffic and Motor Vehicle Safety Act (the "Safety Act"), it chose not to create a private cause of action, and it delegated authority to the National Highway Traffic Safety Administration (the "NHTSA") to address such matters. Thus, Count III should be dismissed as a matter of statutory interpretation, as preempted by a comprehensive federal regulatory scheme, and pursuant to the doctrine of primary jurisdiction.

For these reasons, the Complaint should be dismissed in its entirety and with prejudice.

2

## II.    BACKGROUND

Padilla and Shames are Florida residents who each bought used Porsche-brand cars more than four years before they commenced this action in November 2018. Padilla expressly alleges that he bought a used model year ("MY") 2011 Porsche Panamera from a Miami luxury car dealership in 2013.[1] (Compl., ¶ 13.) Shames alleges that he bought his used MY 2011 Porsche Cayenne S from Carmax in 2014. (*Id.* at ¶ 14.) Although Shames fails to disclose the exact date of his purchase, government records show it was purchased in July 2014. (*See* McClure Decl., Ex. A, Florida Motor Vehicle Dep't Report.)[2]

Neither Plaintiff indicates the condition of his used car at the time of purchase, and neither states whether he purchased his car "as is." However, both Plaintiffs purchased their used cars from non-party used car dealers. (Compl., ¶¶ 13, 14.) Thus, pursuant to federal law, both Plaintiffs presumably received notice of the "defects that may occur in used motor vehicles," including "leakage" in the "Cooling System"—the exact "defect" alleged in the Complaint. *See* 16 C.F.R. § 455.2(a)(2) (requiring used car dealers to "prominently and conspicuously" display a "Buyers Guide" on any used car sold to a consumer); *id.* at § 455.3 (requiring that, at purchase, a used car dealer must give the consumer a copy of the Buyers Guide "containing all of the disclosures required by the Rule").[3] Nevertheless, Plaintiffs now seek relief from PCNA—a new-car distributor that played no role in their respective purchase transactions.

---

[1]      Padilla alleges he bought his used car from "The Collection Porsche." Based on government records, the Court should take judicial notice that no such entity exists. *See Search for Corporations, Limited Liability Companies, Limited Partnerships, and Trademarks By Name*, FLA. DEP'T OF STATE, http://search.sunbiz.org/Inquiry/CorporationSearch/ByName (enter "The Collection" in search bar and click "Search Now"); *see also Townsend v. Crews*, No. 14-2412, 2014 WL 6979646, at *1 n.1 (S.D. Fla. Dec. 9, 2014) (Moreno, J.) (noting that judicial notice may be taken of such records). That dealership's actual name is also confirmed on its website. *See generally* THE COLLECTION, https://www.thecollection.com (last visited Jan. 12, 2019).

[2]      The Court may take judicial notice of that government record. "A court may take judicial notice of and consider documents attached to a motion to dismiss . . . which are public records that are central to a plaintiff's claims, without converting the motion to dismiss into a motion for summary judgment. This is so, as long as such documents are public records that are not subject to reasonable dispute because they are capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned." *Domond v. Peoplenetwork APS*, No. 16-24026, 2017 WL 5642450, at *2 n.1 (S.D. Fla. June 16, 2017) (Moreno, J.) (citation, internal quotation marks, and alterations omitted).

[3]      A sample Buyers Guide is appended to the McClure Declaration as Exhibit C.

### III.    ARGUMENT

Dismissal is proper if the plaintiff either fails to allege facts supporting the essential elements of his claim or otherwise fails to state a claim upon which relief may be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 666 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). On a motion to dismiss, the plaintiff's factual allegations must be accepted as true. *Huntings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994). However, neither unreasonable inferences nor "conclusions of law or sweeping legal conclusions cast in the form of factual allegations" should be accepted. *United States v. Air Fla., Inc.*, 534 F. Supp. 17, 20 (S.D. Fla. 1982). That is so because the Federal Rules "demand[] more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Indeed, the Rules "require[] more than labels and conclusions," and, thus, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Pursuant to this well-settled standard, the Complaint should be dismissed with prejudice.

### A.    <u>Plaintiffs' FDUTPA claim should be dismissed with prejudice.</u>

Plaintiffs' FDUTPA claim should be dismissed as a matter of law, and with prejudice, because this suit was filed more than four years after Plaintiffs bought their cars, which is outside of the applicable limitations period. *See* FLA. STAT. § 95.11(3)(f). It should also be dismissed because Plaintiffs have not alleged the facts necessary to establish the essential elements of a FDUTPA claim: *i.e.*, the occurrence of some deceptive or unfair practice by the defendant, and actual damages.

### 1.    Plaintiffs' FDUTPA claim is time-barred.

Under FDUTPA, claims are time-barred unless they are asserted within four years of the date on which the allegedly defective product was purchased. *See, e.g.*, *Marlborough Holdings Grp., Ltd. v. Azimut-Benetti, Spa, Platinum Yacht Collection No. Two, Inc.*, 505 F. App'x 899, 906 (11th Cir. 2013) (table decision) ("Hall purchased the yacht . . . in May 2001. Marlborough's causes of action stemming from those events thus expired in 2005. Because Marlborough did not file its initial complaint until December 28, 2008, its FDUTPA claims were time-barred . . . .") (footnote omitted); *Koski v. Carrier Corp.*, No. 16-25372, 2017 WL 9324356, at *3 (S.D. Fla. Aug. 18, 2017) (holding that "the statute of limitations for a FDUTPA claim is four years," and that the "statute of limitations accrues at the time the product at issue is purchased"). In this case,

Plaintiffs filed the Complaint in November 2018, more than four years after Padilla bought his used Panamera in 2013 (*see* Compl., ¶ 13), and more than four years after Shames bought his used Cayenne S in July 2014 (*see* McClure Decl., Ex. A, Florida Motor Vehicle Dep't Report). Thus, Plaintiffs' FDUTPA claim is untimely, and it should be dismissed with prejudice.

Plaintiffs may argue that the limitations period was tolled until they discovered the alleged defect (*i.e.*, when it allegedly manifested). That argument would, however, be meritless because the "delayed discovery rule" does not apply to FDUTPA claims. *See Marlborough Holdings*, 505 F. App'x at 906 (explaining that the delayed discovery rule does not apply to FDUTPA claims because they rest on statutory liability, not fraud); *Koski*, 2017 WL 9324356, at *3 ("The Florida legislature has established a delayed discovery rule for actions founded upon fraud or constructive fraud. However, since claims under FDUTPA are founded on statutory liability, not fraud, the delayed discovery rule does not apply."); *Speier-Roche v. Volkswagen Grp. of Am., Inc.*, No. 14-20107, 2014 WL 1745050, at *6 (S.D. Fla. Apr. 30, 2014) (Moreno, J.) ("A FDUTPA claim accrues at the time of purchase or lease of a product, not upon discovery of an alleged defect. It is well-settled there is no 'delayed discovery rule' applicable to FDUTPA claims.") (citation omitted).

Nor can Plaintiffs salvage their FDUTPA claim by invoking the "fraudulent concealment" doctrine. "Fraudulent concealment requires the defendants to engage in the willful concealment of the cause of action using fraudulent means to achieve that concealment." *Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1282 n.1 (11th Cir. 2003). "Allegations of inaction and nondisclosure are wholly insufficient"; "[t]he 'fraudulent means' alleged must go beyond nondisclosure, and constitute active and willful concealment." *Heuer v. Nissan N. Am., Inc.*, No. 17-60018, 2017 WL 3475063, at *3 (S.D. Fla. Aug. 11, 2017) (citation and internal quotation marks omitted). "Moreover, to invoke a fraudulent concealment toll, Plaintiff must plead facts establishing that Defendant deliberately and actively concealed the material facts *for the purpose of inducing her to delay filing this action*." *Speier-Roche*, 2014 WL 1745050, at *7 (Moreno, J.) (emphasis added). No such facts have been pleaded here. Plaintiffs merely state that PCNA "could have but did not inform Plaintiffs" of the alleged defect. (Compl., ¶ 42; *see also id.* at ¶ 63.) Plaintiffs have not alleged a single fact showing active and willful concealment, let alone the specific intent to prevent the timely assertion of FDUTPA claims.

**2.      In any event, Plaintiffs have not adequately alleged the essential elements of a FDUTPA claim.**

a.      <u>Plaintiffs do not allege facts showing that PCNA acted deceptively.</u>

Plaintiffs' FDUTPA claim fails insofar as it is based on affirmative misrepresentations. To support it, they cite the following statements:

- The subject vehicles can "handl[e] the daily commute as supremely as [they] do[] the Corkscrew at Laguna Seca." (Compl., ¶ 7.)

- "Porsche. There is no substitute." (Id. at ¶ 17.)

- "A lot has gone into the manufacture of your Porsche, including advanced engineering, rigid quality control and demanding inspections." (Id.)

- "Arrive at your destination more safely, comfortably & efficiently." (Id. at ¶ 45.)

- "Performance, safety and the environment are a balance – one that Porsche engineering tackled to create a level of environmental responsibility and regard for driving safety that reflects a more balanced view of one's place in the world." (*Id.* at ¶ 46.)

- "Another of our principles: high performance should never come at the expense of comfort or safety, and this is something we have kept to. Even with a car offering the phenomenal out-put of the Cayenne Turbo." (*Id.*)

None of those statements are actionable. They are not false or deceptive. At most, they constitute non-actionable sales puffery because they do not go "beyond exaggeration and assign[] a product a specific quality that it does not possess . . . ." *Hummel v. Tamko Bldg. Prods., Inc.*, No. 15-910, 2016 WL 7340301, at \*3 (M.D. Fla. Mar. 28, 2016); *see also Thompson v. Proctor & Gamble Co*, No. 18-60107, 2018 WL 5113052, at \*2 (S.D. Fla. Oct. 19, 2018) ("In distinguishing actionable representations from non-actionable 'puffery' under FDUTPA, courts in this district have looked to whether the claims are specific and measurable, as opposed to vague and highly subjective."). Statements regarding general attributes like "safety," "performance," and "quality" are not actionable because they are not quantifiable. *See Next Century Commc'ns Corp. v. Ellis*, 318 F.3d 1023, 1028 (11th Cir. 2003) (concluding that statement of "strong performance" was not actionable because it was "not the sort of empirically verifiable statement that can be

affirmatively disproven"); *In re Managed Care Litig.*, 150 F. Supp. 2d 1330, 1346 (S.D. Fla. 2001) (concluding that such statements "are textbook examples of puffery").[4]

Plaintiffs do not and cannot plead facts to plausibly support a contrary argument. The mere fact that they assert an alleged defect in their **used cars** does not show any of PCNA's assertions—which pertain either to the Porsche brand, generally, or to brand-new (not used) cars—were somehow actionable. Indeed, Plaintiffs have not pleaded facts to support their theory that the recited brochure and marketing language was demonstrably false.[5]

Insofar as Plaintiffs premise their FDUTPA claim on alleged omissions, it fares no better. That is so because Plaintiffs plead no facts to show PCNA had a duty to inform them of the alleged defect. In fact, their allegations suggest the exact opposite conclusion. Plaintiffs bought their cars from non-party dealerships. (*See* Compl., ¶¶ 13-14.) They have not alleged, and cannot plausibly allege, that they were entitled to any notice from PCNA, which played no role in their respective purchase transactions. Moreover, Plaintiffs fail to plausibly allege how, when, or where information regarding the alleged defect should have been disclosed by PCNA. *Compare Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1226 (9th Cir. 2015) (finding that plaintiffs, who bought new cars from authorized dealerships, evinced proof of an actionable omission under California's consumer protection law), *with Butler v. Porsche Cars N. Am., Inc.*, No. 16-2042, 2017 WL 1398316, at *11 (N.D. Cal. Apr. 19, 2017) (faulting plaintiff's theory of class-wide fraud by omission because used car purchasers had not necessarily interacted with PCNA or a PCNA-authorized dealership, and plaintiff thus "ha[d] not clearly explained **what** information [PCNA] omitted . . . [or] **where** [PCNA] should have disclosed the information").

Finally, Plaintiffs' FDUTPA claim should be dismissed—regardless of the theory upon which it is based—because Plaintiffs have not adequately and plausibly alleged facts showing

---

[4]     Plaintiffs may argue, based on their own self-serving allegations, that representations of "safety" were false. Such an argument would, however, disregard that those representations were neither specific to their model vehicles nor "specific and measurable, as opposed to vague and highly subjective." *Thompson*, 2018 WL 5113052, at *2.

[5]     Plaintiffs plead no facts to show that PCNA ever made any representations about the quality of their respective used cars, which, pursuant to federal law, they must have purchased either "as is" or with some form of written warranty—and in any event, with notice of potential "leakage" in the "Cooling System." 16 C.F.R. §§ 455.2(a)(2), 455.3. (*See also* McClure Decl., Ex. C, Sample Buyers Guide at 3.) Nor do they address the issue of timing: *i.e.*, the impact of the vehicle-specific disclosures given at the time of purchase on any earlier statements that they may have seen or heard.

that PCNA had actual knowledge of the claimed defect when Plaintiffs purchased their used cars. Plaintiffs assert PCNA had such knowledge based on: (1) a single consumer complaint to PCNA (Compl., ¶ 14); (2) posts to third-party websites that are not owned or controlled by PCNA (*id.* at ¶¶ 6, 41); (3) "records from and complaints to" the NHTSA (*id.* at ¶ 6); (4) unspecified "internal records," "dealership records," and "warranty and post-warranty claims" (*id.*); and (5) "reports and claims" relating to a "similar design and defect" in other model and model-year vehicles (*id.*). For several reasons, those assertions fall flat.

First, Plaintiffs have done little more than provide "a formulaic recitation" of potential sources of knowledge, which "will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Plaintiffs have not at all detailed the contents of the "internal records," "dealership records," and "warranty and post-warranty claims" to which they refer, let alone the extent to which those documents might reveal the existence of a latent defect. Nor do they articulate how such documents show that PCNA learned of the alleged defect's existence **before** they bought their used cars. Therefore, those allegations are wholly ineffective and should be disregarded.

The same is true of conclusion should be drawn from Plaintiffs' references to consumer complaints. The letter Shames sent to PCNA is irrelevant because it post-dates his purchase. *See Wilson v. Volkswagen Grp. of Am., Inc.*, No. 17-23033, 2018 WL 4623539, at *8 (S.D. Fla. Sept. 26, 2018); *see also Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 974 n.9 (N.D. Cal. 2008). ("There are no allegations that [the defendant] knew of the customer complaints at the time [Plaintiffs] bought the products at issue."). In any event, evidence that PCNA received isolated complaints does not mean it was or should have been aware of a widespread defect. *See Resnick v. Hyundai Motor Am., Inc.*, No. 16-593, 2017 WL 6549931, at *13, *21 (C.D. Cal. Aug. 21, 2017). "Random anecdotal examples of disgruntled customers . . . [are] not enough to impute knowledge upon defendants." *Oestreicher*, 544 F. Supp. 2d at 974 n.9; *see also Baba v. Hewlett-Packard Co.*, No. 09-5946, 2011 WL 317650, at *3 (N.D. Cal. Jan. 28, 2011) ("Awareness of a few customer complaints . . . does not establish knowledge of an alleged defect.").

Plaintiffs' reliance on comments made on third-party websites is even more suspect—despite the fact that those are at least detailed in the Complaint. (*See* Compl., ¶ 41.) Such

comments were not made to PCNA, and Plaintiffs do not allege that PCNA ever became aware of them. *See Wiseberg v. Toyota Motor Corp.*, No. 11-3776, 2012 WL 1108542, at *13 (D.N.J. Mar. 30, 2012) ("While anonymous Internet complaints could be relevant to the issue of knowledge, it must be shown that Toyota was aware of these complaints."); *Kent v. Hewlett-Packard Co.*, No. 09-5341, 2010 WL 2681767, at *8 (N.D. Cal. July 6, 2010) (rejecting plaintiffs' reliance on "a series of online postings" because plaintiffs failed to allege how or when the manufacturer defendant learned of those online postings, and whether it knew of them when the products at issue were sold).[6]

Finally, "reports and claims" relating to earlier MY Porsche 911 vehicles did not give PCNA "knowledge" of a "defect" in Plaintiffs' cars. Plaintiffs refer to a NHTSA investigation of an alleged cooling system defect in MY 2001-2011 Porsche 911 vehicles and claim that alleged defect is substantially similar to the defect alleged in this lawsuit. (*See* Compl., pp. 8-9 & nn. 2-9.)[7] But by Plaintiffs' own admission, the Porsche 911 is materially different than both the Porsche Panamera and Porsche Cayenne S (*i.e.*, Plaintiffs' cars). That is so because the Porsche 911 does not share the same engine placement or design. (*See* Compl., ¶ 40 ("Unlike the [Porsche 911], the engine and the engine coolant system in [Plaintiffs' cars] are located in the front of the vehicle.); *id.* (alleging that "the layout, size, and design of engine, drivetrain, steering, and cooling system components is different in [Plaintiffs' cars]").) The differences between those vehicles, combined with the fact that the NHTSA found no safety-related cooling system defect in the MY 2001-2011 Porsche 911 vehicles (*see* McClure Decl., Ex. B, ODI Resume at 1 (Mar. 10, 2014)), demonstrates that Plaintiffs have not plausibly alleged that the earlier NHTSA investigation gave PCNA "knowledge" of a defect in certain used cars.

---

[6]     Although *Wiseberg* and *Kent* pertained to other States' consumer protection laws (*i.e.*, the New Jersey Consumer Fraud Act and the California Legal Remedies Act, respectively), those decisions are instructive. They demonstrate—with respect to an alleged product defect and a claim for relief under a State consumer protection statute—that comments posted to third-party websites on the internet do not constitute proof of the defendant manufacturer's or distributor's knowledge of the alleged defect.

[7]     The Court may take judicial notice of the government record to which Plaintiffs cite, which is attached to the McClure Declaration as Exhibit B. (*See* Compl., pp. 8-9 & nn. 2-9.) *See also Domond*, 2017 WL 5642450, at *2 n.1 (Moreno, J.).

          **b.**     <u>Plaintiffs do not allege facts showing PCNA engaged in any sort of unfair practice.</u>

In the absence of a deceptive practice, a plaintiff can plead a violation of the FDUTPA based on an unfair practice—*i.e.*, "one that offends established public policy and . . . is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *PNR*, 842 So.2d at 777. An injury premised on an unfair practice "(1) must be substantial; (2) must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and (3) must be an injury that consumers themselves could not reasonably have avoided." *Porsche Cars N. Am., Inc. v. Diamond*, 140 So.3d 1090, 1096 (Fla. 3d Dist. Ct. App. 2014). Plaintiffs, however, plead no facts meeting the standards set forth in *PNR* and *Diamond*, and they thus fail to support their claim on this ground.

          **c.**     <u>Plaintiffs have not pleaded facts to support a claim for actual damages.</u>

"[W]hen a plaintiff in her complaint fails to allege a recoverable loss under FDUTPA, the complaint fails to state a cause of action under FDUTPA." *Rodriguez v. Recovery Performance & Marine, LLC*, 38 So.3d 178, 180 (Fla. 3d Dist. Ct. App. 2010). Thus, Plaintiffs must plead facts supporting a claim for "actual damage." FLA. STAT. § 501.222(a). Consequential damages, including out-of-pocket repair costs, are not recoverable. *Clear Marine Ventures*, 2010 WL 528477, at *3 (Moreno, J.).

Here, Plaintiffs do not adequately plead actual damages. The only damages they attempt to describe are their out-of-pocket repair costs (Compl., ¶¶ 13-14; *see also id.* at ¶¶ 42, 44, 65), which are not recoverable. *See Clear Marine Ventures*, 2010 WL 528477, at *3 (Moreno, J.); *see also Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 538 (S.D. Fla. 2015) (rejecting plaintiff's "backdoor attempt to recover vehicle repair costs, which constitute consequential damages and are unrecoverable under FDUTPA"). Nor can they recover for "towing, . . . maintaining, and servicing" their cars, or for "costs associated with arranging and obtaining alternative means of transportation," all of which Plaintiffs admit are "incidental and consequential damages." (Compl., ¶ 77.)

In a passing and conclusory manner, Plaintiffs also state they "suffered an untimely and accelerated diminution in value of [their] Vehicles." (*Id.* at ¶ 65.) It thus appears Plaintiffs are attempting to plead in conformity with the "general rule" that "the measure of actual damages under the FDUTPA is the difference in market value of the product in the condition in which it

was delivered and its market value in the condition in which it should have been delivered according to agreement between the parties." *Clear Marine Ventures*, 2010 WL 528477, at *3 (Moreno, J.). Nevertheless, Plaintiffs fall well short of meeting that standard. They have not pleaded the "value of [their used cars] in the condition in which [they were] delivered." *Id.* Further, neither Plaintiff has pleaded (and neither can plead) the "market value in the condition in which [their car] should have been delivered according to agreement between the parties." *Clear Marine Ventures*, 2010 WL 528477, at *3. That is so because PCNA was not a party to their purchase transactions, and there was no "agreement between the parties." *See id.*

**B.**   **Plaintiff's implied warranty claim should be dismissed with prejudice.**

**1.**   **Plaintiffs lack privity with PCNA.**

"Under Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity." *Mesa v. BMW of N. Am., LLC*, 904 So.2d 450, 458 (Fla. 3d Dist. Ct. App. 2005). Here, Plaintiffs cannot maintain an implied warranty claim against PCNA because they did not purchase their used cars from PCNA. *See id.* PCNA "is an automotive distributor, not a dealer. The Plaintiffs could not have purchased their vehicles from [PCNA]. Thus, [they] lack privity with [PCNA] and the implied warranty claim must" be dismissed with prejudice. *Tershakovec*, 2018 WL 3405245, at *10 (Moreno, J.); *see also In re Takata Airbags Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1346 (S.D. Fla. 2016) (Moreno, J.) (same).[8]

**2.**   **Padilla does not allege that he gave PCNA adequate pre-suit notice of his implied warranty claim.**

Padilla fails to plead that he ever provided any kind of pre-suit notice to PCNA regarding his intent to assert an implied warranty claim. Thus, pursuant to the Florida Commercial Code, his claim should be dismissed. *See* FLA. STAT. § 672.607(3)(a) ("The buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach ***or be barred from any remedy***[.]") (emphasis added).

Padilla may argue by reference to Section 672.607(3)(a) that he was obligated only to provide notice to "the seller," which was the non-party used car dealer from which he purchased

---

[8]   In the Complaint, Plaintiffs conclude without any sort of factual support that "privity is not required in this case because Plaintiff [*sic*] . . . are the intended third-party beneficiaries of contracts between [PCNA] and its dealers; specifically, they are the intended beneficiaries of [PCNA's] implied warranties." (Compl., ¶ 78.) This Court need not accept such "conclusions of law or sweeping legal conclusions . . . .," *Air Fla.*, 534 F. Supp. at 20, which, in any event, have already been rejected by this Court. *See Tershakovec*, 2018 WL 3405245, at *10 (Moreno, J.).

his car, The Collection. *See id.* (*See also* Compl., ¶ 13.) That argument would, however, be specious. Padilla does not plead facts demonstrating that he ever provided written pre-suit notice to The Collection. Furthermore, the statute's reference to "the seller" does not relieve Padilla of providing pre-suit notice to the party he actually intended to sue (here, PCNA). It merely serves to highlight the need for privity between the parties. As discussed above, privity is lacking here and warrants dismissal with prejudice (as to both Plaintiffs).

> ### 3.   Plaintiffs' implied warranty claim also fails because they have not alleged facts showing whether their used cars were purchased "as is."

Because Plaintiffs bought used cars from dealers, they either purchased those cars "as is" or with some sort of written warranty—the only options recognized by federal law. *See* 16 C.F.R. § 455.2. (*See also* McClure Decl., Ex. C, Sample Buyers Guide at 3.) Because Plaintiffs fail to specify whether they bought their cars "as is," they fail to plead the facts necessary to support their implied warranty claim. *See* FLA. STAT. § 672.316(a)(2) (plainly stating that "all implied warranties are excluded by expressions like "as is"); *see also H & H Laundry Corp. of Orlando v. TheLaundryList.com, Inc.*, No. 10-938, 2010 WL 3119896, at *2 (M.D. Fla. Aug. 6, 2010) (dismissing warranty claims because products at issue were purchased "as is"); *Masker v. Smith*, 405 So.2d 432, 434 (Fla. 5th Dist. Ct. App. 1981) (affirming entry of judgment against plaintiff, who bought a used car "as is" and later brought an implied warranty claim against the used car dealer from which he bought it).

> ## C.   Injunctive relief is not available to Plaintiffs.

A plaintiff cannot seek injunctive relief unless he pleads a likelihood of immediate future harm. Here, however, Plaintiffs merely allege past injuries, and their "allegations do not support a finding of standing . . . ." *Herazo*, 2015 WL 4514510, at *3 (Moreno, J.); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.") (citation and internal quotation marks omitted). Indeed, Shames sold his car and Padilla had the alleged defect repaired (Compl., ¶¶ 13-14), and neither Plaintiff has indicated any intent to buy another of the allegedly defective cars at issue in the future. Thus, Plaintiffs lack Article III standing to seek injunctive relief. *See Herazo*, 2015 WL 4514510, at *3 (Moreno, J.); *see also Marty v. Anheuser-Busch Cos., LLC*, 43 F. Supp. 3d 1333, 1358 (S.D. Fla. 2014) ("There is no likelihood of injury in the future if a plaintiff has no interest

in purchasing the product at issue again because it does not work or does not perform as advertised.").

In any event, Plaintiffs are wrong to seek injunctive relief in Count III of the Complaint by reference to the Declaratory Judgment Act, because that Act is "procedural only," *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937), and it merely "permits a party to apply to a federal court for a declaration of an underlying right or relation rather than waiting for the adjudication of such rights in a traditional coercive action," *Christ v. Beneficial Corp.*, 547 F.3d 1292, 1299 (11th Cir. 2008) (citations and internal quotation marks omitted). It does not permit Plaintiffs to seek injunctive relief in this action. *See id.* at 1299-1300 (vacating district court's award of injunctive relief under the Declaratory Judgment Act).[9]

Plaintiffs cannot avoid this conclusion by masking their requests for injunctive relief as "declarations." (Compl., ¶ 82.) In the Complaint, Plaintiffs request "declarations" that "all persons who purchased the Defective Vehicles are to be provided the best practicable notice of the defect, which cost shall be borne by [PCNA]" and that PCNA "must establish an inspection and repair program and protocol, and notify the Class Members of such program and protocol, pursuant to which [PCNA], including its authorized representatives, will repair and replace all necessary parts of the engine coolant systems in the Class Members' Defective Vehicles, and at no cost to the Class Members." (Compl., ¶ 82.) But those are not requests for "declarations." Through those requests, Plaintiffs plainly ask for a "court order commanding or preventing an action"—the very definition of an injunction. BLACK'S LAW DICTIONARY (10th ed. 2014).

"Simply put, a rose by any other name is still a rose." *Sanchez-Farge v. Mukasey*, No. 08-60644, 2008 WL 2096375, at *1 (S.D. Fla. May 13, 2008). Plaintiffs' invitation to ignore the plain language of the Declaratory Judgment Act—not to mention the interpretations thereof by the Supreme Court of the United States, the United States Court of Appeals for the Eleventh Circuit, and this Court—should be rejected.

---

[9]     The Complaint references no other statute or common law doctrine under which such relief might be granted. In any event, Plaintiffs cannot rely on FDUTPA or the Florida Commercial Code, because their claims for relief under those statutes are time-barred or otherwise fail. *See supra*, pp. 4-12.

13

**D.** **The forms of relief requested in Count III should be dismissed as a matter of statutory interpretation, as preempted, or pursuant to the doctrine of primary jurisdiction.**

As noted above, Plaintiffs ask the Court to find and declare that certain model and model-year vehicles "contain a design defect in the engine coolant system," and to compel PCNA to both "establish an inspection and repair program and protocol" under which it must "repair and replace all necessary parts of the engine coolant systems" in those vehicles, "at no cost to" their owners or lessees. (Compl., ¶ 82.) In no uncertain terms, they seek a judicial determination of a defect, and the creation and implementation of a judicially mandated vehicle recall and repair process—in other words, a "judicial recall." (*See id.*)

Plaintiffs should not be permitted to seek such relief in this venue. Although Plaintiffs' requests purportedly arise under the Declaratory Judgment Act, that Act merely allows them to seek a declaration "of an underlying right or relation rather than waiting for the adjudication of such rights in a traditional coercive action." *Christ*, 547 F.3d at 1299 (citations and internal quotation marks omitted). In other words, Plaintiffs' request for a declaration cannot be considered in a vacuum; they must have a right to it, by statute or under the common law. Here, that right arises, if at all, under the Safety Act, under which motor vehicle manufacturers must "notify the Secretary [of Transportation] by certified mail, and the owners, purchasers, and dealers of the vehicle. . . if the manufacturer (1) learns the vehicle . . . contains a defect and decides in good faith that the defect is related to motor vehicle safety." 49 U.S.C. § 30118(c).[10] But "the Safety Act confers no private right of action to enforce its notification requirements." *Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 522 (11th Cir. 2000); *see also id.* at 523 (holding that "the express provision [in the Safety Act] of a private cause of action for a distributor or dealer to enforce the obligations of a manufacturer or distributor related to safety defects or safety standard violations found in a vehicle ***prior*** to its sale to a consumer . . . is strong evidence that Congress knew how to create a private cause of action to enforce the notification requirements

---

[10]     PCNA again notes that Plaintiffs have not adequately pleaded that the alleged defect would negatively impact motor vehicle safety. Indeed, in its earlier investigation, the NHTSA Office of Defects Investigation ("ODI") found "no crashes or injuries reported to be related to the alleged defect" (*see* McClure Decl., Ex. B, ODI Resume at 1 (Mar. 10, 2014)), and neither Plaintiff alleges such an event. Further, the ODI found that no safety-related defect had been identified and concluded that "further use of agency resources [did] not appear to be warranted." (*Id.* at 2.)

and would have done so expressly if it had intended to create" one). Thus, Plaintiffs have no right to the "declarations" they seek.

Plaintiffs cannot salvage their request for a judicial recall by seeking relief in relation to FDUTPA, rather than the Safety Act, because FDUTPA—insofar as it would permit claims for such relief—is preempted by the Safety Act. Congress delegated the authority to the Secretary of Transportation and the NHTSA to establish, administer, regulate, and enforce the reporting and disclosure requirements applicable to automobile manufacturers, as well as the procedures governing automotive recalls and associated notifications. *See* 49 U.S.C. § 30101, *et seq.* The Safety Act establishes certain reporting and disclosure requirements relating to motor vehicle safety, and also establishes "its own extensive array of administrative remedies for a violation of its notification obligations." *Ayres*, 234 F.3d at 522. In light of this extensive administrative scheme (and the absence of a private right of action, as discussed above), this Court should decline the invitation to create additional remedies for a violation of the reporting or recall requirements of the Safety Act. As explained by the United States Court of Appeals for the Eleventh Circuit:

> As the Supreme Court has explained, it is . . . an elemental canon of statutory construction that where a statute expressly provides a remedy, courts must be especially reluctant to provide additional remedies. When Congress creates certain remedial procedures, we are, in the absence of strong indicia of contrary congressional intent, . . . compelled to conclude that Congress provided precisely the remedies it considered appropriate. Quite simply, great caution is necessary because implying a private cause of action in such a case would undermine the administrative remedies.

*McDonald v. S. Farm Bureau Life Ins. Co.*, 291 F.3d 718, 725 (11th Cir. 2002) (citations and internal quotation marks omitted).

The comprehensive nature of the federal administrative scheme governing Safety Act reporting, the substantial discretion afforded to the Secretary of Transportation, and the absence of a private right of action all "suggest[] a clear congressional intent to limit encroachment on the agency's work." *In re Bridgestone/Firestone Inc. Tires Prods. Liab. Litig.*, 153 F. Supp. 2d 935, 945 (S.D. Ind. 2001) (citing *Chicago & N. W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 321 (1981)). Indeed, the comprehensiveness of the Safety Act's provisions regarding defect reporting "demonstrate convincingly" that any state laws permitting private enforcement of the Act's reporting and recall provisions "frustrate the purposes of the Safety Act," and are impliedly

15

preempted. *See id.* at 945-46; *see also Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347-52 (2001) (concluding that claims permitting a private cause of action to enforce standards under the Food, Drug and Cosmetic Act were impliedly preempted, as the Act at issue did not permit a private right of action, and enforcement was reserved to a federal agency).

Additionally, to the extent Plaintiffs seek either a judicial recall or a court-mandated notification campaign relating to an alleged defect, the authority to issue such orders lies within the exclusive jurisdiction of the NHTSA, and the Safety Act impliedly preempts recall authority derived from any other source. *See* 49 U.S.C. §§ 30118, 30120; *Cox House Moving, Inc. v. Ford Motor Co.*, No. 06-1218, 2006 WL 2303182, *8-9 (D.S.C. Aug. 8, 2006) (dismissing request for recall as impliedly preempted by Safety Act); *Lilly v. Ford Motor Co.*, No. 00-7372, 2002 WL 84603, *5 (N.D. Ill. Jan. 22, 2002) ("While the recall provisions of the Safety Act do not expressly state that only the Secretary of Transportation may order a motor vehicle recall, 'the comprehensive nature of the federal administrative scheme' suggests that it was Congress's intent that only the Secretary of Transportation may do so."); *Namovicz v. Cooper Tire & Rubber Co.*, 225 F. Supp. 2d 582, 584-85 (D. Md. 2001) (holding that Sections 30118 through 30120 of the Safety Act "completely preempt the area of vehicle and equipment recalls"); *In re Bridgestone/Firestone*, 153 F. Supp. 2d 935 (dismissing claims for judicial recall on basis that claims are impliedly preempted by Safety Act); *Coker v. DaimlerChrysler Corp.*, No. 01-CVS-1264, 2004 WL 32676, at *4 (N.C. Super. Ct. Jan. 5, 2004) ("To help provide an efficient system in which different forums do not render ineffectual administrative remedies to consumers, the recalls under the Safety Act preempt recalls ordered by courts under state law.").

Finally, Plaintiffs' request for a declaration of a "defect" and the establishment of a judicial recall should be dismissed pursuant to the doctrine of primary jurisdiction. That doctrine applies "to claims properly cognizable in court that contain some issue within the special competence of an administrative agency," *Reiter v. Cooper*, 507 U.S. 258, 268 (1993), and permits this Court to dismiss Plaintiffs' claim in deference to the special expertise (and Congressional delegation of authority to) the NHTSA. Although "no fixed formula exists for applying the doctrine," *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303 (1976), courts typically consider whether: (1) the case involves a matter within the special expertise of the agency; and (2) there is a need to promote uniformity in administrative policy or a possibility of

inconsistent results between the courts and the agency. *See Far E. Conf. v. United States*, 342 U.S. 570 (1952); *Texas & Pac. R. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426 (1907).

As applied here, those factors favor dismissal. The NHTSA has primary jurisdiction over determinations of vehicle defects, the creation and maintenance of consumer notification processes, and the establishment and maintenance of vehicle recall procedures. *See Coker*, 2004 WL 32676, at *5 ("Primary jurisdiction clearly belongs to NHTSA. If a design defect does in fact exist, the agency has the resources to investigate the claim and order a recall . . . ."); *see also, e.g.*, *Silvas v. Gen. Motors*, No. 14-89, 2014 WL 1572590 (S.D. Tex. Apr. 17, 2014); *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 627-628 (M.D.N.C. 2005). Indeed, this case is a particularly strong candidate for application of the doctrine, as Plaintiffs have no claims—not one—upon which relief can be granted in a court of law.

## IV.     CONCLUSION

For all of the reasons stated above, Plaintiffs have not stated any claim upon which relief can be granted. Therefore, the Complaint should be dismissed in its entirety and with prejudice.

Respectfully submitted,


*/s/ Fredrick H.L. McClure*
Fredrick H.L. McClure, Esq.
  *fredrick.mcclure@dlapiper.com*
**DLA Piper LLP (US)**
200 South Biscayne Boulevard
Miami, Florida 33131-5341
Telephone:     813.222.5908
Facsimile:     813.371.1111


William F. Kiniry, Jr.
  *william.kiniry@dlapiper.com*
  (*pro hac vice* application pending)
Matthew A. Goldberg
  *matthew.goldberg@dlapiper.com*
  (*pro hac vice* application pending)
**DLA Piper LLP (US)**
1650 Market Street, Suite 5000
Philadelphia, PA 19103-7300
Telephone:     215.656.3300
Facsimile:     215.656.3301

## <u>CERTIFICATE OF SERVICE (electronic filing)</u>

**I HEREBY CERTIFY** that on January 28, 2019, I electronically filed the foregoing Motion and supporting Memorandum of Law with the Clerk of the Court using the Court's CM/ECF system which will send notification of such filing to the following counsel of record:

T. Michael Morgan (FSB 0062229)
**MORGAN & MORGAN, P.A.**
20 North Orange Avenue, Suite 1600
Orlando, FL  32801
Phone:  (407) 420-1414
Email: mmorgan@forthepeople.com


Timothy G. Blood (admitted *pro hac vice*)
Paula R. Brown (admitted *pro hac vice*)
**BLOOD HURST & OREARDON, LLP**
501 West Broadway, Suite 1490
San Diego, CA  92101
Phone:  (619) 338-1100
Email: tblood@bholaw.com
Email: pbrown@bholaw.com


                                        *s/ Fredrick H.L. McClure*
                                        Fredrick H.L. McClure, Esq.
                                        Counsel for Defendant,
                                        Porsche Cars North America, Inc.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

| | |
|---|---|
| SANTIAGO PADILLA and MURRAY L. SHAMES, individually and on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>PORSCHE CARS NORTH AMERICA, INC., a Delaware corporation,<br><br>       Defendant. | Case No. 1:18-cv-24988-FAM |

### [PROPOSED] ORDER

**AND NOW**, this _____ day of _____, 2019, upon consideration of the Motion to Dismiss by Defendant, Porsche Cars North America, Inc., all memoranda and argument submitted in support of and opposition thereto, it is hereby **ORDERED** that the Motion is **GRANTED**. It is further **ORDERED** that the Complaint is dismissed in its entirety and with prejudice.

_____
FEDERICO A. MORENO, DISTRICT JUDGE