UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 18-24988-CIV-MORENO

SANTIAGO PADILLA and MURRAY L.
SHAMES, individually and on behalf of all
others similarly situated,

    Plaintiffs,

vs.

PORSCHE CARS NORTH AMERICA, INC.,
a Delaware Corporation,

    Defendant.
_____/

## ORDER GRANTING IN PART
## DEFENDANT PORSCHE CARS NORTH AMERICA, INC.'S MOTION TO DISMISS

Plaintiffs Santiago Padilla and Murray Shames (collectively, "Plaintiffs") filed a Class Action Complaint against Defendant Porsche Cars North America, Inc. ("Porsche"), seeking declaratory relief and damages for alleged violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and for breach of the implied warranty of merchantability under Florida law, based upon Porsche's alleged knowledge of an alleged safety defect in the cooling system of certain Porsche vehicle models. Porsche filed a Motion to Dismiss, asking the Court to dismiss Plaintiffs' 3-count Class Action Complaint with prejudice under Federal Rules of Civil Procedure 8(a), 12(b)(1), and 12(b)(6). For the reasons below, Porsche's Motion to Dismiss is **GRANTED IN PART**.

    I.    **BACKGROUND**

Plaintiffs allege that Porsche sold its high-end performance vehicles as safe, despite knowing for more than a decade that it used a defective epoxy adhesive to join coolant pipes to the

thermostat housing assembly. According to Plaintiffs, the "Cooling System Defect" occurs when the epoxy adhesive degrades, loosens, and eventually fails due to the contraction and expansion of coolant pipes caused by repeated heating and cooling over time; and when the epoxy adhesive fails, the cooling pipes separate from the thermostat housing assembly, causing a significant coolant leak that in turn causes the engine to overheat.

Plaintiff Padilla purchased his used 2011 Porsche Panamera from The Collection, a car dealership located in Miami, Florida. Plaintiff Shames bought his used 2011 Cayenne S from the Carmax in Tampa, Florida. Within two years of purchase, each high-end performance vehicle suffered the Cooling System Defect, which resulted in each Plaintiff having to pay thousands of dollars in repairs out of their pockets. After Shames's vehicle suffered the Cooling System Defect a second time, within seventeen months of the first occurrence, he wrote a letter to Porsche notifying them of the Cooling System Defect and demanded that Porsche pay for the repairs. When Porsche refused to pay, because the repairs were incurred outside the standard warranty period, Shames traded in his 2011 Cayenne S at a loss. Padilla apparently still owns his vehicle.

On November 29, 2018, Plaintiffs commenced this class action lawsuit on behalf of themselves and a nationwide class of all current or former owners and/or lessees of certain Porsche models that suffer from the Cooling System Defect. On January 28, 2019, Porsche filed a Motion to Dismiss the Class Action Complaint.

## II.   LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive dismissal, the Class Action Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. And those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. When ruling on Porsche's Motion to Dismiss, the Court must view Plaintiffs' Class Action Complaint in the light most favorable to Plaintiffs and accept Plaintiffs' well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 954 (11th Cir. 1986).

### III. DISCUSSION

The Class Action Complaint asserts three claims against Porsche: (1) in Count I, violation of the Florida Deceptive and Unfair Trade Practices Act, Florida Statute Sections 501.201, *et seq.*; (2) in Count II, breach of the implied warranty of merchantability under Florida law; and (3) in Count III, declaratory relief pursuant to 28 U.S.C. Section 2201. Porsche seeks to dismiss each Count with prejudice. The Court addresses each Count in turn.

#### A. COUNT I – FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

In Count I, Plaintiffs assert one claim for violation of the Florida Deceptive and Unfair Trade Practices Act. Porsche argues this FDUTPA claim should be dismissed with prejudice as barred by the statute of limitations.

##### 1. Statute of Limitations

"A statute of limitations bar is 'an affirmative defense, and . . . [P]laintiff[s] [are] not required to negate an affirmative defense in [their] complaint.'" *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (quoting *Tregenza v. Great Am. Comms. Co.*, 12 F.3d 717, 718 (7th Cir. 1993)). Dismissal under Rule 12(b)(6) on statute of limitations grounds "is

3

appropriate only if it is 'apparent from the face of the complaint' that the claim is time-barred." *Id.* (citations omitted). When the time-bar is apparent from the face of the complaint, Plaintiffs bear the burden of pleading allegations sufficient to toll the statute of limitations. *See Heuer v. Nissan N. Am., Inc.*, No. CV 17-60018, 2017 WL 3475063, at *4 (S.D. Fla. Aug. 11, 2017) (citing *Patel v. Diplomat*, 605 F. App'x 965, 966 (11th Cir. 2015) (applying *La Grasta* and finding that, where the dates included in the complaint made the time-bar apparent, plaintiff was required to allege facts that supported tolling the statute of limitations)).

The statute of limitations for Plaintiffs' claim under FDUTPA is four years. *See* Fla. Stat. § 95.11(3)(f); *Speier-Roche v. Volkswagen Grp. of Am. Inc.*, No. 14-20107-CIV, 2014 WL 1745050, at *6 (S.D. Fla. Apr. 30, 2014). A FDUTPA claim accrues "at the time of purchase or lease of a product, not upon discovery of an alleged defect." *Id.* (citing *Matthews v. Am. Honda Motor Co., Inc.*, No. 12-60630-CIV, 2012 WL 2520675, at *4 (S.D. Fla. June 6, 2012)).

Here, Plaintiffs commenced this action on November 29, 2018. Plaintiffs Padilla and Shames allege they purchased their used vehicles in 2013 and 2014, respectively. (D.E. 1 at ¶¶ 13–14.) While Plaintiffs do not specify in the Class Action Complaint which month they purchased their respective vehicles, *see id.*, it appears the four-year limitations period has run on both claims. Regardless of what month Padilla purchased his vehicle in 2013, the limitations period ran on his FDUTPA claim in 2017. Whether the limitations period has run on Shames's FDUTPA claim requires closer inspection because he purchased his vehicle in 2014.

Porsche submits, as an exhibit to a declaration, a Vehicle Information Check from the Florida Department of Highway Safety and Motor Vehicles showing Shames purchased his vehicle in July 2014. (*See* D.E. 12-1.) Porsche requests that the Court take judicial notice of this Vehicle Information Check. (D.E. 13.) This Court has previously recognized that it "may take judicial

4

notice of and consider documents attached to a motion to dismiss or response, which are public records that are central to a plaintiff's claims, without converting the motion to dismiss into a motion for summary judgment" so long as "such documents are public records that [are] not subject to reasonable dispute because they [are] capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned." *Domond v. Peoplenetwork APS*, No. 16-24026-CIV, 2017 WL 5642450, at *2 n.1 (S.D. Fla. June 16, 2017) (quoting *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (quoting Fed. R. Evid. 201(b)), *aff'd*, 748 F. App'x 261 (11th Cir. 2018) (*per curiam*)) (internal quotation marks omitted).

Here, the Court will take judicial notice of the Vehicle Information Check because Plaintiffs do not oppose Porsche's request (*see* D.E. 21 at 3), and because the Vehicle Information Check held by the Florida Department of Highway Safety and Motor Vehicles is a public record that is not subject to reasonable dispute. *See id.*; *Townsend v. Crews*, No. 14-24126-CIV, 2014 WL 6979646, at *1 n.1 (S.D. Fla. Dec. 9, 2014) (Moreno, J.) (taking judicial notice of "records which can be found online" on government website); *see also Snyder v. Enter. Rent-A-Car Co. of San Francisco (ERAC-SF)*, 392 F. Supp. 2d 1116, 1120 n.2 (N.D. Cal. 2005) (taking judicial notice of Department of Motor Vehicle records) (citing *Shaghoian v. Aghajani*, 228 F. Supp. 2d 1107, 1109 n.4 (C.D. Cal. 2002) (same)). Therefore, Porsche's Motion for Judicial Notice (D.E. 13) is granted in part.[1]

The Vehicle Information Check on Shames's vehicle reveals that it was purchased in July 2014. As such, the statute of limitations on Shames's FDUTPA claim ran in July 2018—four

---

[1] In light of the reasons discussed *infra* regarding the sufficiency of Plaintiffs' FDUTPA allegations, the Court need not address at this time whether it will judicially notice the remaining exhibits attached to Porsche's declaration (D.E. 12-2, 12-3), which are also the subject of Porsche's Motion for Judicial Notice (D.E. 13).

months before this action commenced in November 2018. Therefore, it is "'apparent from the face of the complaint' that the [FDUTPA] claim is time-barred" under Section 95.11(3)(f). *La Grasta*, 358 F.3d at 845 (citation omitted). Now, it is Plaintiffs burden to plead allegations sufficient to toll the statute of limitations. *See Heuer*, 2017 WL 3475063, at *4 (citing *Patel*, 605 F. App'x at 966).

### 2. Fraudulent Concealment

Plaintiffs attempt to invoke the doctrine of fraudulent concealment to toll the statute of limitations on their time-barred FDUTPA claim. To invoke fraudulent concealment, Plaintiffs must plead facts establishing Porsche "engage[d] in the willful concealment of the cause of action using fraudulent means to achieve that concealment." *Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1282 n.1 (11th Cir. 2003) (citing *Berisford v. Jack Eckerd Corp.*, 667 So.2d 809, 811 (Fla. Dist. Ct. App. 1995)). Plaintiffs must also plead factual matter establishing that Porsche "deliberately and actively concealed the material facts for the purpose of inducing [Plaintiffs] to delay filing this action." *Speier-Roche*, 2014 WL 1745050, at *7 (citing *Licul v. Volkswagen Grp. of Am., Inc.*, No. 13-61686-CIV, 2013 WL 6328734, at *6 (S.D. Fla. Dec. 5, 2013)).

Moreover, "[a] fraudulent concealment claim is subject to Fed. R. Civ. P. 9(b)'s requirement that the circumstances constituting fraud shall be stated with particularity. *Id.* Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake," although "conditions of a person's mind," such as malice, intent, and knowledge may be alleged generally. Fed. R. Civ. P. 9(b). "The 'particularity' requirement serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008)

(quoting *Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)). To meet this standard, the Class Action Complaint needs to identify: (1) the precise statements, documents or misrepresentations made; (2) the time and place of and persons responsible for the statements; (3) the content and manner in which the statements misled Plaintiffs; and (4) what Porsche gained by the alleged fraud. *Id.* (citing *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316–17 (11th Cir. 2007)).

Here, Plaintiffs fail to allege with sufficient particularity any claims of fraudulent concealment. Plaintiffs' Opposition memorandum argues that Porsche "affirmatively concealed the Cooling System Defect from the public, thereby delaying Plaintiffs and others from knowing they had a claim." (D.E. 22 at 13.) Plaintiffs direct the Court to several allegations in the Class Action Complaint to support their argument. *Id.* (citing D.E. 1 at ¶¶ 33–36). But none of these allegations allege any facts showing "willful concealment" by Porsche, *Raie*, 336 F.3d at 1282 n.1—let alone any facts suggesting Porsche "deliberately and actively concealed . . . material facts for the purpose of inducing [Plaintiffs] to delay filing this action," *Speier-Roche*, 2014 WL 1745050, at *7.

By way of examples, Plaintiffs allege that the Office of Defects Investigation ("ODI") of the National Highway Traffic Safety Administration opened an investigation into complaints about sudden, high volume coolant leakage in certain Porsche models, apparently caused by faulty epoxy used to adjoin pipes in the cooling systems. (D.E. 1 at ¶ 32.) Plaintiffs then allege that Porsche, in response to the ODI investigation, "identified a manufacturing quality issue with the supplier's application of adhesive to coolant pipe fittings that resulted in elevated failure rates" in certain Porsche models. *Id.* at ¶ 33. Plaintiffs further allege Porsche "admitted in its filings with the ODI that it 'did not conduct specific durability testing of the adhesive bonds used in the coolant pipe

fittings,'" and that as part of the ODI investigation, Porsche "admitted that in 2007 – well before it designed and manufactured the Defective Vehicles – that it conducted an internal investigation into reported epoxy adhesive failures on coolant pipe fittings located at the 'water neck' of the water pump housing" in certain Porsche vehicles. *Id.* at ¶¶ 33–34. Plaintiffs also allege that as a result of the internal investigation, Porsche claimed that it "identified the cause as inadequate application of adhesive," and represented to ODI that Porsche's supplier "introduced an automated metering device for application of adhesive on pipe adapters." *Id.* at ¶ 35. Finally, Plaintiffs allege that Porsche represented to ODI that even though there was an epoxy problem, it was not a safety issue. *Id.* at ¶ 36.

At most, Plaintiffs allegations taken as true constitute mere "inaction"—which is "wholly insufficient" to constitute "active and willful concealment." *Heuer*, 2017 WL 3475063, at *3 (quoting *Licul*, 2013 WL 6328734, at *6). Notably, Plaintiffs derive each allegation that purportedly establishes fraudulent concealment from a public disclosure issued by ODI. (*See* D.E. 1 at 9–10 nn.2–7 (citing U.S. Department of Transportation, National Highway Traffic Safety Administration, ODI Resume, PE 13-009).)[2] These public disclosures are the opposite of fraudulent concealment. *See Heuer*, 2017 WL 3475063, at *4 (noting statements made by defendant "may be viewed as a public admission . . . that there is a defect in their vehicle, which

---

[2] Porsche also requests that the Court take judicial notice of the ODI Resume. (*See* D.E. 13 (requesting judicial notice of D.E. 12-2).) The Court grants Porsche's Motion to judicially notice the ODI Resume because is a public record, *see Domond*, 2017 WL 5642450, at *2 n.1, and because Plaintiffs do not oppose Porsche's request (*see* D.E. 21 at 3), or otherwise contest the contents of the ODI Resume. Indeed, Plaintiffs explicitly rely on the ODI Resume in support of their claims. (*See* D.E. 1 at ¶¶ 32–38.) Therefore, for this additional reason, the Court finds it appropriate to consider the ODI Resume at this motion to dismiss stage. *See also Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal . . . .").

8

would negate any claims of fraudulent concealment"). Thus, even when viewing Plaintiffs' allegations in the light most favorable to them, the allegations do not even amount to "nondisclosure"—which itself is legally insufficient to toll the statute of limitations under Florida law, *see Speier-Roche*, 2014 WL 1745050, at *7.

For these reasons, even when taking the allegations as true, the Court finds that Plaintiffs fail to establish fraudulent concealment, and thus they cannot toll the statute of limitations. In their Opposition memorandum, Plaintiffs request leave to "amend the complaint to allege additional facts regarding communications with Porsche and its authorized dealers." (D.E. 22 at 14 n.4.) Plaintiffs' request is granted, such that Plaintiffs may plead additional facts to support fraudulent concealment. *See Noah v. Assor*, No. 18-24336-CIV, 2019 WL 1099950, at *8 (S.D. Fla. Mar. 8, 2019) (granting leave to amend complaint to cure pleading deficiencies) (citing *Montes v. M & M Mgmt. Co.*, No. 15-80142-CIV, 2015 WL 11254703, at *2 (S.D. Fla. May 12, 2015) ("Rule 15(a) provides that leave to amend should be freely given . . . .")). Therefore, Porsche's Motion to Dismiss Count I with prejudice is granted in part, as Count I is dismissed without prejudice.

Finally, because the Court is granting Plaintiffs leave to amend their fraudulent concealment allegations, the Court need not address the sufficiency of Plaintiffs' FDUTPA claims at this time. Notwithstanding, the parties are granted leave to renew these arguments after Plaintiffs amend the Class Action Complaint.

**B.    COUNT II – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER FLORIDA LAW**

In Count II, Plaintiffs assert one claim for breach of the implied warranty of merchantability under Florida law. Plaintiffs argue Porsche knew it was using a defective epoxy adhesive in the engine cooling system for certain Porsche models and that the Cooling System Defect rendered their vehicles not in merchantable condition and not fit for ordinary use. Porsche

argues this claim should be dismissed for lack of contractual privity between Plaintiffs and Porsche, because Plaintiffs purchased their used vehicles from The Collection and Carmax dealerships—and not directly from Porsche.

### 1. **Contractual Privity**

"Under Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity." *Mesa v. BMW of N. Am., LLC*, 904 So. 2d 450, 458 (Fla. Dist. Ct. App. 2005) (citing *Kramer v. Piper Aircraft Corp.*, 520 So.2d 37 (Fla. 1988); *Weiss v. Johansen*, 898 So.2d 1009, 1012 (Fla. Dist. Ct. App. 2005); *Spolski Gen. Contractor v. Jett–Aire Corp. Aviation Mgmt. of Cent. Fla., Inc.*, 637 So.2d 968, 970 (Fla. Dist. Ct. App. 1994)).

Time and again, Florida courts have dismissed breach of implied warranty claims under Florida law for lack of contractual privity where the plaintiff purchaser did not purchase a product directly from the defendant. *See, e.g., Rentas v. DaimlerChrysler Corp.*, 936 So.2d 747, 751 (Fla. Dist. Ct. App. 2006) (affirming dismissal of breach of implied warranty claim against DaimlerChrysler for lack of contractual privity where plaintiffs purchased used vehicle from dealership, and not directly from DaimlerChrysler); *Cerasani v. Am. Honda Motor Co.*, 916 So. 2d 843, 847 (Fla. Dist. Ct. App. 2005) (affirming dismissal of breach of implied warranty claim against American Honda for lack of contractual privity where plaintiff did not lease vehicle from American Honda, but instead, leased vehicle from a lessor that purchased the vehicle from a dealership); *Mesa*, 904 So. 2d at 458 (affirming trial court's grant of summary judgment to BMW on breach of implied warranty claim because plaintiff leased vehicle from dealership, and thus "there was no privity of contract between [plaintiff] and BMW"); *Weiss*, 898 So.2d at 1012 ("[I]n order to recover for breach of a warranty either express or implied, the plaintiff must be in privity of contract with the defendant."); *Spolski Gen. Contractor*, 637 So.2d at 970 (finding no

contractual privity where "there was no sale from Moore to Spolski, ... no contract between Spolski and Moore, no reliance by Spolski on any warranty, no warranty given to Spolski, and no indemnity because there was no relationship between Spolski and Moore on the Jett–Aire project").

Consistent with the overwhelming weight of Florida law, this Court has repeatedly ruled that to establish contractual privity to state a breach of implied warranty claim, plaintiffs must purchase the product at issue directly from the defendant. *See, e.g.*, *In re Takata Airbag Prod. Liab. Litig.*, 193 F. Supp. 3d 1324, 1346 (S.D. Fla. 2016) (Moreno, J.) ("Mazda is an automotive distributor, not a dealer. [Plaintiff] could not have purchased his vehicle from Mazda. Thus, [Plaintiff] lacks privity with Mazda and the implied warranty claim must fail."); *Tershakovec v. Ford Motor Co.*, No. 17-21087-CIV, 2018 WL 3405245, at *10 (S.D. Fla. July 12, 2018) (Moreno, J.) (dismissing breach of implied warranty claim under Florida law against Ford because Plaintiffs "purchased their vehicles from authorized Ford dealerships, not from Ford directly," and thus Plaintiffs "lack[ed] privity with Ford") (citing *Mesa*, 904 So. 2d at 458; *David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1322–23 (S.D. Fla. 2009) (dismissing breach of implied warranty claim under Florida law against American Suzuki or Suzuki Japan for lack of contractual privity because plaintiff "purchased his motorcycle from dealer Motorsports in Miami, not from American Suzuki or Suzuki Japan")); *see also Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290, 1303–04 (S.D. Fla. 2017) (Moreno, J.) (dismissing breach of implied warranty claim under Florida law for lack of contractual privity where plaintiffs purchased rifles from third-party sellers, and not directly from the defendant manufacturers).

Here, Plaintiffs did not purchase their vehicles directly from Porsche—who is "the exclusive importer and distributor of Porsche vehicles for the United States" (D.E. 1 at ¶ 15).

11

Instead, Plaintiffs purchased their used Porsche vehicles from The Collection and Carmax dealerships. *Id.* at ¶¶ 13–14. Consistent with Florida law, and this Court's application thereof, because Plaintiffs did not purchase their used vehicles directly from Porsche, they lack contractual privity with Porsche and their implied warranty claim necessarily fails as a matter of law. *See, e.g., Rentas*, 936 So.2d at 751; *Cerasani*, 916 So. 2d at 847; *Mesa*, 904 So. 2d at 458; *Weiss v. Johansen*, 898 So.2d at 1012; *Spolski Gen. Contractor*, 637 So.2d at 970; *see also, e.g., In re Takata Airbag Prod. Liab. Litig.*, 193 F. Supp. 3d at 1346; *Melton v. Century Arms, Inc.*, 243 F. Supp. 3d at 1304; *Tershakovec*, 2018 WL 3405245, at *10; *see also Bailey v. Monaco Coach Corp.*, 168 F. App'x 893, 894 n.1 (11th Cir. 2006) (*per curiam*) (affirming summary judgment for defendant manufacturer on breach of implied warranty claim because no contractual privity existed where plaintiff purchased motor home "from a dealer and not directly from" the defendant manufacturer).

### 2. Third-Party Beneficiary Exception to Contractual Privity Requirement

Nevertheless, Plaintiffs argue they can still establish contractual privity under the third-party beneficiary exception under *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223 (S.D. Fla. 2014). There, a federal district court recognized the third-party beneficiary exception, and ruled the plaintiff sufficiently established contractual privity because the plaintiff pleaded that she purchased a Ford vehicle from a dealer who was an agent of Ford, and that the plaintiff was the intended consumer of the vehicle. *Id.* at 1232–34.

In *Tershakovec v. Ford Motor Co.*, this Court confronted—and rejected—the very argument advanced by Plaintiffs here. *Compare* 2018 WL 3405245, at *10, *with* D.E. 22 at 20–21. This Court, consistent with its own prior rulings, declined to follow *Sanchez-Knutson* and ruled that contractual privity could not be established because the plaintiffs "could not have

12

purchased their vehicles from Ford," who was "an automotive distributor, not a dealer." *Id.* Likewise here, consistent with this Court's prior rulings—and with the overwhelming weight of Florida authority, *see supra*—the Court declines to follow *Sanchez-Knutson*.[3]

Plaintiffs' third-party beneficiary exception argument also relies on the Eleventh Circuit's ruling in *Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022 (11th Cir. 2017). But this reliance is misplaced. In *Glob. Quest, LLC*, the plaintiff obtained a limited express warranty through direct negotiations with certain defendants for the purchase of a super-yacht. *Id.* at 1025–26. The district court ruled that the Magnuson-Moss Warranty Act did not apply to limited warranties, and thus granted summary judgment to defendants. *Id.* at 1031. The Eleventh Circuit reversed, ruling that the "plain language" of the Magnuson-Moss Warranty Act "prohibits sellers from disclaiming implied warranties when either a full or a limited warranty is provided by the seller." *Id.* The Eleventh Circuit explained that "[i]f a jury concludes that one or all of the defendants issued or agreed to be bound by the limited written warranty, the disclaimer of implied warranties therefore would be ineffective to bar plaintiff's claim." *Id.*

Only then, the Eleventh Circuit addressed certain defendants' argument—an argument "in the alternative," *id.* at 1032—that they were entitled to summary judgment because plaintiff could not establish contractual privity. *Id.* The Eleventh Circuit rejected this argument, finding there

---

[3] The Court notes that other federal district courts applying Florida law to breach of implied warranty claims have also declined to follow *Sanchez-Knutson*. *See, e.g., Johnson v. Nissan N. Am., Inc.*, No. 17-CV-00517-WHO, 2018 WL 905850, at *5 (N.D. Cal. Feb. 15, 2018) (applying Florida law) ("Because the weight of the authority from modern Florida courts is consistent, however, I decline to follow *Sanchez-Knutson*, and instead follow the Florida courts' clear guidance that Florida law does not recognize this exception."); *In re Seagate Tech. LLC Litig.*, No. 16-CV-00523-JCS, 2017 WL 3670779, at *9 (N.D. Cal. Aug. 25, 2017) (applying Florida law) ("Neither Plaintiffs' opposition nor the district court's decision in *Sanchez-Knutson* cites any Florida authority holding the third-party beneficiary exception applicable in a consumer products context.").

13

was a genuine issue of material fact as to which defendant(s) "issued the limited express warranty," and consequently a genuine issue of material fact regarding contractual privity. *Id.* In so ruling, the Eleventh Circuit then noted that "Florida courts have found the privity requirement to be satisfied when a manufacturer directly provides a warranty to, or otherwise has direct contact with, a buyer who purchases from a third party." *Id.* (citing *ISK Biotech Corp. v. Douberly*, 640 So.2d 85, 88 (Fla. Dist. Ct. App. 1994); *Cedars of Lebanon Hosp. Corp. v. European X-Ray Distribs. of America, Inc.*, 444 So.2d 1068, 1072 & n.4 (Fla. Dist. Ct. App. 1984)). It is this language that Plaintiffs clasp onto. (*See* D.E. 22 at 21.)

The Court interprets this language as non-binding dicta and does not construe it (or the cited Florida cases) as confirming—let alone establishing under Florida law—a third-party beneficiary exception to the contractual privity requirement. But, to the extent this language is not dicta, *Glob. Quest, LLC* and the cited Florida cases are distinguished from the immediate case for a simple crucial reason: the plaintiff purchasers in those cases had direct negotiations with, or received direct representations through agents from, the defendants. In *Glob. Quest, LLC*, the Eleventh Circuit's analysis centered around the direct negotiations between the parties. Specifically, the Eleventh Circuit noted that a jury could find the plaintiff received "a unique limited express warranty that was provided and specifically negotiated as part of the purchase," and later noted that there was evidence that certain defendants were "directly involved in the negotiation of the purchase and limited warranty." *Glob. Quest, LLC*, 849 F.3d at 1032. In *ISK Biotech Corp.*, the court sustained a finding of contractual privity under a breach of express warranty claim because the defendant manufacturer's representative informed a third-party seller that the seller could in turn "assure" purchasers that the product would not destroy crops. 640 So.2d at 88. And in *Cedars of Lebanon Hosp. Corp.*, the defendant manufacturer's representative

14

"called upon" the plaintiff purchaser and "made direct representations" about the equipment in dispute. 444 So.2d at 1072.

Here, unlike in those cases, Plaintiffs do not allege any factual matter that Porsche was "directly involved in the negotiation of the purchase and limited warranty" of the used vehicles, *Glob. Quest, LLC*, 849 F.3d at 1032; that Porsche "made direct representations" to Plaintiffs concerning the used vehicles, *Cedars of Lebanon Hosp. Corp.*, 444 So.2d at 1072; or that Porsche made direct representations to The Collection or Carmax that were in turn "assure[d]" to Plaintiffs about the used vehicles, *ISK Biotech Corp.*, 640 So.2d at 88. Indeed, the Florida District Court of Appeal in *Cedars of Lebanon Hosp. Corp.* "emphasize[d]" that it "focus[ed] on the direct contacts between the manufacturer and the ultimate purchaser/consumer in finding that privity exist[ed] in th[e] case." 444 So. 2d at 1072 n.4. The District Court of Appeal continued: "[h]ad there been no direct contact between the two parties, [the] contention that there was no privity, and thus no liability for breach of warranties, would be correct. It is the *direct contacts* which create the express and implied warranties under [Florida law]." *Id.* (emphasis added). Therefore, the lack of direct negotiations or contacts between Porsche and Plaintiffs, and lack of representations made by Porsche to Plaintiffs, renders these authorities inapposite. Consequently, the Court will not find (under Florida law) that contractual privity can be established through the third-party beneficiary exception.

Finally, even if the third-party beneficiary exception exists under Florida law, Plaintiffs' conclusory allegations—that they were the intended third-party beneficiaries of "contacts between Porsche and its dealers" and "Porsche's implied warranties" (D.E. 1 at ¶ 78)—fall short of invoking this exception to the privity requirement. *See Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1224 (S.D. Fla. 2017) ("A claim for a breach of implied warranty under a third-party beneficiary

theory, if it exists, does not arise from the conclusory assertion that Plaintiffs were 'the intended third-party beneficiaries of contracts between Defendants and its dealers.'").

Simply put, Plaintiffs purchased their used Porsche vehicles from The Collection and Carmax dealerships—not directly from Porsche. Because Porsche did not directly sell, or negotiate the sale of, the used vehicles to Plaintiffs, there is no contractual privity, and thus Plaintiffs cannot state a claim for breach of the implied warranty of merchantability under Florida law. Therefore, Porsche's Motion to Dismiss Count II is granted. Furthermore, Count II is dismissed with prejudice because any amendment would be futile. *See Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1287 (11th Cir. 2003) (citing "futility of the amendment" as a ground for denying leave to amend); *Tershakovec*, 2018 WL 3405245, at *10, 14 (dismissing with prejudice breach of implied warranty claim for lack of contractual privity).

## C. COUNT III – DECLARATORY RELIEF

In Count III, Plaintiffs seek declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. Plaintiffs ask the Court for "entry" of certain "declarations," including that: (1) all defective vehicles contain a design defect in the engine cooling system; (2) all purchasers of defective vehicles receive the best practicable notice of the defect, paid for by Porsche; and (3) Porsche must establish an inspection and repair program and protocol, and repair and replace all necessary parts of the engine cooling system in the defective vehicles at no cost to class members. (*See* D.E. 1 at ¶ 82.)

"Declaratory relief is a procedural device which depends on an underlying substantive cause of action and cannot stand on its own." *Eveillard v. Nationstar Mortg. LLC*, No. 14-CIV-61786, 2015 WL 127893, at *9 (S.D. Fla. Jan. 8, 2015) (citation omitted). Since Plaintiffs' substantive claims have all been dismissed, the claim for declaratory relief is also dismissed. *See*

*Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1199 (S.D. Fla. 2017) (dismissing declaratory relief claim where all substantive claims were dismissed) (citing *Eveillard*, 2015 WL 127893, at *9); *see also Robb v. Rahi Real Estate Holdings LLC*, No. 10-81474-CIV, 2011 WL 2149941, at *8 (S.D. Fla. May 23, 2011) ("The only outstanding claim that has not been dismissed with prejudice, declaratory judgment . . . cannot stand on its own."); *Access Pictures, LLC v. Sony Pictures Home Entm't, Inc.*, No. 16-20529-CIV, 2017 WL 3107202, at *7 (S.D. Fla. Feb. 21, 2017) ("[B]ecause the tortious interference claim is time-barred, the related declaratory judgment action is also time-barred."), *report and recommendation aff'd and adopted*, No. 16-20529-CIV, 2017 WL 7735188 (S.D. Fla. Dec. 29, 2017).

Furthermore, because actions for declaratory relief do not have their own statute of limitations, it is the substantive right sued upon that governs the applicable limitations period. *Rosenbaum v. Becker & Poliakoff, P.A.*, No. 08-81004-CIV, 2010 WL 376309, at *8 (S.D. Fla. Jan. 26, 2010) (citing *Luckenbach S.S. Co. v. United States*, 312 F.2d 545, 548 & n.2 (2d Cir. 1963)). Thus, the limitations period for a declaratory relief claim premised on rights protected by FDUTPA is also four years under Florida Statute Section 95.11(3)(f). Because the Court is granting Plaintiffs leave to amend their allegations concerning fraudulent concealment, thus leaving open the question whether or not the FDUTPA claims are barred by the statute of limitations, the declaratory relief claim in Count III is dismissed without prejudice.[4]

Notwithstanding, the Court notes that assuming Plaintiffs' FDUTPA claim is not barred by the statute of limitations, the declaratory relief claim appears to be redundant and superfluous. In

---

[4] Because the Court need not address the sufficiency of Plaintiffs' FDUTPA claim at this time, the Court also need not address the parties' other contentions regarding the declaratory relief claim. As such, the parties are granted leave to renew these arguments after Plaintiffs amend the Class Action Complaint.

determining whether Porsche violated FDUTPA, the Court will very likely have to resolve issues for which Plaintiffs seeks declaratory relief. Consequently, when filing an amended class action complaint, Plaintiffs should consider whether their declaratory relief claim is necessary as a separate cause of action. *See MSP Recovery, LLC v. Allstate Ins. Co.*, No. 15-20788-CIV, 2015 WL 10857402, at *3 (S.D. Fla. June 24, 2015).

### IV. CONCLUSION

For the foregoing reasons, it is

**ADJUDGED** that Porsche's Motion to Dismiss **(D.E. 11)** is **GRANTED IN PART** as follows:

(1) Counts I and III are **DISMISSED WITHOUT PREJUDICE**, and Plaintiffs' request for leave to amend the Class Action Complaint is **GRANTED** such that Plaintiff may allege additional facts regarding fraudulent concealment in support of tolling the statute of limitations on the FDUTPA claim in Count I;

(2) Count II is **DISMISSED WITH PREJUDICE**;

(3) Plaintiffs must file an amended complaint **no later than Wednesday, June 12, 2019**. Failure to do so will result in a final order of dismissal; and

(4) Should Plaintiffs file an amended complaint, Porsche must answer or respond to the amended complaint **no later than Wednesday, June 26, 2019**.

It is also

**ADJUDGED** that Porsche's Motion for Judicial Notice **(D.E. 13)** is **GRANTED IN PART**, such that the Court takes judicial notice only of Exhibits A and B (D.E. 12-1, 12-2).

**DONE AND ORDERED** in Chambers at Miami, Florida, this ___ of May 2019.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record