UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 18-24988-CIV-MORENO

SANTIAGO PADILLA and MURRAY L.
SHAMES, *individually and on behalf of all
others similarly situated*,

           Plaintiffs,

vs.

PORSCHE CARS NORTH AMERICA, INC.,
a Delaware *Corporation*,

           Defendant.
_____/

## ORDER GRANTING IN PART DEFENDANT PORSCHE'S MOTION TO DISMISS

Earlier in this case, the Court dismissed the initial complaint on statute of limitations grounds because both Plaintiffs purchased a used Porsche more than 4 years before filing their complaint. The Court also found that the Plaintiffs' fraudulent concealment allegations were not sufficient to toll the statute of limitations on their Florida Deceptive and Unfair Trade Practices Act claim. The Plaintiffs were granted leave to amend their fraudulent concealment allegations and later filed the First Amended Class Action Complaint. Porsche countered with a Motion to Dismiss With Prejudice on grounds that the amended fraudulent concealment allegations are still not sufficient to toll the statute of limitations. For the reasons below, the Motion to Dismiss is **GRANTED IN PART**.

### I.    BACKGROUND

Plaintiffs Santiago Padilla and Murray Shames allege, individually and on behalf of a putative class, that Porsche sold its high-end performance vehicles as safe, despite knowing for more than a decade about substantial safety risks caused by using a defective epoxy adhesive to

join coolant pipes to the thermostat housing. According to the Plaintiffs, the "Cooling System Defect" occurs when epoxy adhesive degrades, loosens, and eventually fails due to the contraction and expansion of coolant pipes caused by repeated heating and cooling over time. The Plaintiffs allege that when the epoxy adhesive fails, the cooling pipes separate from the thermostat housing, causing a significant coolant leak that in turn can cause an engine to overheat, fail without warning, or worse, cause a wreck because leaked coolant creates slippery road conditions.

In 2013, Padilla purchased a used Porsche Panamera from The Collection, a Porsche authorized dealership and repair center in Miami. Padilla alleges that in 2014, his used Panamera suddenly overheated while driving after the epoxy adhesive failed and the coolant pipes separated from the thermostat housing. He further alleges that The Collection did not tell him at the time of purchase or repair that the cooling system in his used Panamera had the alleged Defect, even though The Collection and Porsche "knew the truth" about the Cooling System Defect.

In July 2014, Shames bought his used Cayenne S from a Carmax in Tampa. Shames alleges that in April 2016, the coolant pipe on his used Cayenne S separated from the thermostat housing due to the epoxy adhesive failing. The same problem reoccurred on Shame's used Cayenne S in September 2017. Shames wrote to Porsche, in May 2018, after he learned through internet research that the problem appeared to be common in Porsche vehicles. Shames told Porsche that there was a repetitive problem with the cooling system and that it appeared the common issue was caused by a hose glued to the engine. Shames alleges that Reeves Porsche, the Porsche authorized dealership and repair center that repaired Shames's used Cayenne S, did not tell him that his used Cayenne S suffered from the Defect, even though Reeves Porsche and Porsche "knew the truth" about the Cooling System Defect.

After Porsche refused to reimburse Shames (because the repairs occurred outside the standard warranty period) Shames traded-in his used Cayenne S at a loss. The First Amended

Class Action Complaint (the "Complaint") does not allege whether Padilla still owns his vehicle.

Despite purchasing their used Porsche vehicles in 2013 and July 2014, the Plaintiffs did not file their initial class action complaint until November 29, 2018.

## II. <u>LEGAL STANDARD</u>

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive dismissal, the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. And those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Finally, the Court must view the allegations in the light most favorable to the Plaintiffs and accept the Plaintiffs' well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 954 (11th Cir. 1986).

## III. <u>DISCUSSION</u>

The Complaint advances two claims: in Count I, violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"); and in Count II, a claim for declaratory relief.

A. <u>COUNT 1 – FDUTPA</u>

Previously, the Court determined that it was apparent from the face of the initial complaint that the 4-year statute of limitations period expired for each Plaintiff's FDUTPA claim because the initial complaint was filed more than 4 years after each Plaintiff purchased their used Porsche vehicle. *See Padilla v. Porsche Cars N. Am., Inc.*, 391 F. Supp. 3d 1108, 1112–13 (S.D. Fla.

2019). The Court also determined that the fraudulent concealment allegations in the initial complaint failed to invoke fraudulent concealment tolling of the statute of limitations—let alone with sufficiently particularity under Federal Rule of Civil Procedure Rule 9(b). *Id.* at 1113–15.

Now, the Court will determine whether the Plaintiffs' amended fraudulent concealment allegations can salvage their time-barred claims. Porsche argues the FDUTPA claim should be dismissed with prejudice because the fraudulent concealment allegations are still insufficient to toll the statute of limitations. The Plaintiffs insist otherwise.

Where a claim is time-barred by the statute of limitations, it is the Plaintiffs' burden to plead allegations sufficient to toll the statute of limitations. *See Heuer v. Nissan N. Am., Inc.*, Case No. 17-60018, 2017 WL 3475063, at *4 (S.D. Fla. Aug. 11, 2017) (citing *Patel v. Diplomat*, 605 F. App'x 965, 966 (11th Cir. 2015) (applying *La Grasta* and finding that, where dates included in complaint made time-bar apparent, plaintiff was required to allege facts supporting tolling of statute of limitations)). To invoke fraudulent concealment tolling, the Plaintiffs must plead factual matter showing that Porsche "engage[d] in the willful concealment of the cause of action using fraudulent means to achieve that concealment." *Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1282 n.1 (11th Cir. 2003) (citing *Berisford v. Jack Eckerd Corp.*, 667 So. 2d 809, 811–12 (Fla. 4th DCA 1995)); *see also Speier-Roche v. Volkswagen Grp. of Am., Inc.*, Case No. 14-20107, 2014 WL 1745050, at *7 (S.D. Fla. Apr. 30, 2014) ("[T]o invoke a fraudulent concealment toll, Plaintiff must plead facts establishing that Defendant deliberately and actively concealed the material facts for the purpose of inducing her to delay filing this action.") (citing *Licul v. Volkswagen Grp. of Am., Inc.*, Case No. 13-61686-CIV, 2013 WL 6328734, at *6 (S.D. Fla. Dec. 5, 2013)).

Here, the Court finds that the Plaintiffs again fail to invoke fraudulent concealment tolling of the statute of limitations on their time-barred FDUTPA claim. First, the fraudulent concealment allegations are still not alleged with sufficient particularity under Rule 9(b). Second, the Plaintiffs'

allegations show that they discovered, or could have discovered, the factual basis for their FDUTPA claim long before the statute of limitations expired. In short, the fraudulent concealment allegations here amount to, at most, inaction—which is "wholly insufficient" to constitute "active and willful concealment." *Heuer*, 2017 WL 3475063, at *3 (quoting *Licul*, 2013 WL 6328734, at *6).

### 1. The Plaintiffs' Fraudulent Concealment Allegations Do Not Meet Rule 9(b) Pleading Requirements

To invoke fraudulent concealment tolling, the Plaintiffs' allegations must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *Thompson Ventures, Inc. v. Brunswick Corp.*, Case No. 18-cv-60816, 2019 WL 341226, at *4 (S.D. Fla. Jan. 28, 2019) (applying Rule 9(b) to argument for tolling statute of limitations on fraudulent concealment grounds). To meet Rule 9(b) pleading requirements, the Plaintiffs must allege: (1) precisely what statements were made in what documents or oral representations or what omissions were made by Porsche; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same; (3) the content of such statements and the manner in which they misled the Plaintiffs; and (4) what Porsche obtained as a consequence of the fraud. *See Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) (quoting *Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 972 (11th Cir. 2007)). In other words, the Plaintiffs must "plead the who, what, when, where, and how" of the allegedly fraudulent statements or omissions. *Id.*

Here, the Complaint does not meet Rule 9(b) pleading requirements. The Plaintiffs do not allege any precise statements, documents, or misrepresentations made by Porsche, the persons responsible for such statements, or how such statements misled the Plaintiffs. Instead, the Complaint is replete with generalized and conclusory allegations like this:

> Porsche willfully concealed from and failed to disclose to Plaintiffs . . . that the Cooling System Defect . . . [was] an ongoing problem that ha[d] not been fixed. Porsche kept Plaintiffs . . . ignorant of material information essential to the pursuit of their claims. As a result . . . Plaintiffs . . . could [not] have discovered the Cooling System Defect even upon reasonable exercise of diligence.

(*See* D.E. 32 at ¶ 49; *see also id.* at ¶¶ 6, 9, 52–55.) Conclusory allegations like this do not satisfy Rule 9(b) standards. *See Andreasen v. Progressive Express Ins. Co.*, Case No. 17-20190, 2017 WL 5635403, at *4 (S.D. Fla. Aug. 25, 2017) ("A plaintiff's generalized and conclusory allegations of fraudulent concealment do not satisfy the requirements of Rule 9(b).") (citation omitted).

Like the first iteration of the complaint, the closest the Plaintiffs come to satisfying Rule 9(b) relates to information that Porsche *publicly disclosed* to the Office of Defects Investigation ("ODI") of the National Highway Traffic Safety Administration:

- "*Porsche identified* a manufacturing quality issue with the supplier's application of adhesive to coolant pipe fittings that resulted in elevated failure rates in approximately 6,800 early production Porsche 997 vehicles."

- "The ODI determined, based on sales data *provided by Porsche*, that the coolant pipe fittings at the water neck assembly were at issue . . . ."

- "*Porsche admitted in its filings* with the *ODI* that it 'did not conduct specific durability testing of the adhesive bonds used in the coolant pipe fittings.'"

- "As part of the ODI investigation, *Porsche admitted* that in 2007 – well before it designed and manufactured the Defective Vehicles – that it conducted an internal investigation into reported epoxy adhesive failures on coolant pipe fittings located at the 'water neck' of the water pump housing in its 997 vehicles."

- "*Porsche also represented* to the ODI that even though there had been a problem, it did not pose a safety risk" and that "*[a]ccording to Porsche*, 'the rate of leakage from a disconnected water neck pipe [was] limited by a plastic clamp which limits the displacement of the pipe to a few millimeters'" that resulted, "*[i]n Porsche's assessment*," in coolant immediately expanding and evaporating.

(*See* D.E. 32 at ¶¶ 32–33, 35 (quoting U.S. Department of Transportation, National Highway

Traffic Safety Administration, ODI Resume, PE 13-009 (D.E. 12-2)) (emphases added).) These allegations about the alleged Defect are based on public disclosures, and thus they cannot invoke fraudulent concealment to toll the statute of limitations. *See Padilla*, 391 F. Supp. 3d at 1115 ("These public disclosures are the opposite of fraudulent concealment.") (citing *Heuer*, 2017 WL 3475063, at *4 (noting statements made by defendant "may be viewed as a public admission . . . that there is a defect in their vehicle, which would negate any claims of fraudulent concealment")).

Even overlooking the lack of particularized factual allegations, the Complaint's repackaged theory of fraudulent concealment still fails to allege that Porsche "engage[d] in the willful concealment of the cause of action using fraudulent means to achieve that concealment." *Raie*, 336 F.3d at 1282 n.1 (citing *Berisford*, 667 So. 2d at 811–12). The Plaintiffs now allege that Porsche's public disclosures show that it "represented to the ODI and the public" that the Cooling System Defect "was fixed"—yet Porsche still "fail[ed] to admit there [was] a defect when questioned by customers, and continu[ed] to advertise the Defective Vehicles as being safe and of a particularly high-end quality." (D.E. 32 at ¶¶ 6, 34; *see also id.* at ¶¶ 38, 40, 42, 49–50.) After reviewing the ODI Resume—which is central to the Plaintiffs' claim[1]—the Court does not find any public declaration by Porsche that the alleged Defect was in fact "fixed."[2]

---

[1] The Court previously granted Porsche's request for judicial notice of the ODI Resume because it is a public record and the Plaintiffs did not oppose the request or otherwise contest its contents. Indeed, the Court found it appropriate to consider the ODI Resume in ruling on the first motion to dismiss because it was *central* to the Plaintiffs' claims. *See Padilla*, 391 F. Supp. 3d at 1115 n.2 (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal . . . .")). For the same reason, the Court will again consider the ODI Resume in ruling on the underlying motion to dismiss.

[2] The Court notes that the Plaintiffs' twice repeated argument that Porsche "publicly represented" and "admitted" that "the problem was *fixed* in January 2008" stretches the allegations in the Complaint. (*See* D.E. 34 at 14 (emphasis added).) Nowhere in the Complaint

According to the ODI Resume, "Porsche identified several factors that could result in degradation of the adhesive in the coolant pipe fittings." (D.E. 12-2 at 4.) These factors included: (1) overheating of the water neck due to racetrack use; (2) variation of adhesive bead thickness and distribution within the joint due to manual application of adhesive; (3) installation of racing components (exhaust system, engine reprogramming, camshafts, aerodynamic kits, *etc.*) that may increase cooling system operating temperatures; (4) low coolant level; and (5) use of non-OEM approved coolants with unknown chemical compositions and potential negative effects on the subject adhesive. *Id.* The ODI Resume also states that "Porsche provided information regarding an internal investigation and subsequent supplier process change" that related specifically to "the second factor" (variation in adhesive application). *Id.* According to Porsche, in 2007 it "investigated claims related to pipe fitting failures in early production 997 generation vehicles and identified the cause as inadequate application of the adhesive." *Id.* Porsche reported that improved employee training, a short-term countermeasure, was implemented by the supplier in July 2007, and that by late January 2008 "the supplier had introduced an automated metering device for application of adhesive on pipe adapters." *Id.*

Although Porsche publicly asserts that inadequate application of the adhesive was a cause, this finding was limited to early production 997 generation vehicles and was the result of an internal investigation relating specifically to only 1 of the potential 5 factors. Even construing the allegations in the light most favorable to the Plaintiffs, taken together, Porsche's public disclosures fall short of a public declaration that the alleged Defect was in fact "fixed." The ODI Resume also

---

or in the ODI Resume does Porsche declare the alleged Defect "fixed." (*See* generally D.E. 12-2, 32.) The Opposition just quotes the Plaintiffs' unquoted allegation in the Complaint. (*See* D.E. 34 at 14 (quoting D.E. 32 at ¶ 50 ("[T]hrough the ODI, Porsche publicly claimed that the problem was fixed in January 2008 with introduction of 'an automated metering device for application of adhesive on pipe adapters.'")).) Thus, the Court does not find any declaration by Porsche that the alleged Defect was in fact "fixed."

stops short of declaring the alleged Defect "fixed": describing the introduction of the automated metering device process only as an "improvement" and finding that "[a] safety-related defect has not been identified at this time and further use of agency resources does not appear to be warranted." *Id.* at 2–3.

Even if the Court read into the ODI Resume that Porsche "fixed" the alleged Defect, the Plaintiffs still fail to meet their burden of alleging factual matter, with sufficient particularity, that shows Porsche "engage[d] in the *willful concealment* of the cause of action *using fraudulent means to achieve that concealment.*" *Raie*, 336 F.3d at 1282 n.1 (emphasis added) (citing *Berisford*, 667 So. 2d at 811–12). As such, the Court cannot find, as the Plaintiffs wish, that Porsche declared the alleged Defect "fixed" through the ODI Resume. By extension, the Court does not find that Porsche fraudulently concealed the alleged Defect by subsequently "failing to admit there [was] a defect when questioned by customers, and continuing to advertise the Defective Vehicles as being safe and of a particularly high-end quality." (D.E. 32 at ¶ 6.)

In short, the Plaintiffs' fraudulent concealment allegations lack sufficient particularity to satisfy Rule 9(b) pleading standards. Furthermore, the allegations are based on Porsche's public disclosures and they do not rise to a public declaration that the Defect was "fixed." Consequently, the Court finds that the Plaintiffs still fail to allege fraudulent concealment to toll the statute of limitations.

### 2. The Plaintiffs Timely Discovered, or Could Have Discovered, the Factual Basis for their FDUPTA Claim

The Plaintiffs also fail to invoke fraudulent concealment tolling because had they exercised "reasonable care and diligence" they would have discovered the basis for their FDUTPA claim long before the statute of limitations expired. The Eleventh Circuit has ruled that neither diligent nor non-diligent plaintiffs are "protected from the expiration of claims the factual basis for which

they could and should have discovered through the exercise of due diligence." *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 836 (11th Cir. 1999), *amended in part on other grounds*, 211 F.3d 1224 (11th Cir. 2000). Such plaintiffs cannot demand protection from a time-barred claim on grounds that the factual basis for the claim "was shrouded by the veil of fraudulent concealment." *Id.*

Here, the Plaintiffs' allegations show that they discovered the factual basis for their FDUTPA claim long before the statute of limitations expired. Shames purchased his used Cayenne S in July 2014, and so the statute of limitations on his FDUTPA claim expired in July 2018. Yet Shames alleges that he first encountered the alleged Defect in April 2016, and then experienced it again in September 2017, when the coolant pipe on his used Cayenne S separated due to the epoxy adhesive failing. (*See* D.E. 32 at ¶ 14.) After the second separation, Shames wrote to Porsche in May 2018—several months before the statute of limitations expired—to inform them that he "*learned through internet research*" that the alleged Defect "appeared to be a common problem with Porsche's vehicles." *Id.* (emphasis added). As for Padilla, he purchased his used Panamera in 2013, and thus the statute of limitations on his FDUTPA claim expired in 2017. Like Shames, Padilla alleges that he first experienced the Defect in 2014, when his used Panamera suddenly overheated after the coolant pipes separated from the thermostat housing due to the epoxy adhesive failing. *See id.* at ¶ 13. And both Plaintiffs allege that—prior to the statute of limitations expiring—the authorized Porsche repair centers that repaired their respective vehicles did not inform them of the alleged Defect despite "kn[owing] the truth." *Id.* at ¶¶ 13–14.

The Plaintiffs' allegations also show that, through the exercise of "reasonable care and diligence," they should have discovered the factual basis for their FDUTPA claim long before the statute of limitations expired. *Razor Capital, LLC v. CMAX Fin. LLC*, Case No. 17-80388, 2017 WL 3481761, at *4 (S.D. Fla. Aug. 14, 2017) (citing *Berisford*, 667 So. 2d at 811–12).

The Plaintiffs' fraudulent concealment theory centers on Porsche publicly declaring in the ODI Resume that the Defect was "fixed." But the publicly accessible ODI Resume issued in 2014—the same year Padilla's used Panamera suffered the alleged Defect and multiple years before Shames's used Cayenne S suffered the alleged Defect. So even assuming the Plaintiffs are correct that Porsche publicly declared the alleged Defect "fixed" in 2014, it follows from that premise that through "reasonable care and diligence" the Plaintiffs could have discovered the predicate facts for their unfair and deceptive trade practices claim: Porsche's public disclosure in the ODI Resume that the alleged Defect was "fixed"—which was available to both Plaintiffs long before the statute of limitations expired—was contradicted by both the Plaintiffs' experiences with their used vehicles, as well as the statements by the authorized Porsche repair centers that there was no common defect.

In addition to the publicly available ODI Resume, through "reasonable care and diligence" in researching online car forums, the Plaintiffs should have discovered the factual basis for their claim. The Plaintiffs plainly allege that "[s]ubsequent to the ODI investigation [in 2014], there [was] widespread complaints reported online about the dangerous Cooling System Defect . . . indicating that Porsche's claim fix of the problem in January 2008 was not in fact a fix." (D.E. 32 at ¶ 40.) The Plaintiffs then include 9 separate "complaints [by consumers] found on various online forums" that all predate the statute of limitations expiring. *See id.* For example, the same year Padilla purchased his used Panamera and the year before Shames purchased his used Cayenne S, the following consumer complaints appeared in publicly accessible online forums:

> July 1, 2013: I just had the same failure...The coolant tube that connects the thermostat housiing [sic] to the upper radiator hose just popped out from the thermostat housing and dropped about 2 qts of coolant. The tube is fastened with epoxy that apparently can fail after repeated heat/cool cycles. The epoxy applicable was visibly insufficient with uneven coverage.

> July 1, 2013: [T]he coolant on mine did leak out recently, as it has for the original posterior [sic] and a couple of other guys, causing a high engine temperature warning. The thermostat housing appears to be the weakness here. This happened after 45k miles.

*Id.* Through all these allegations, the Plaintiffs appear to concede that "reasonable care and diligence" in researching cooling system issues in Porsche vehicles in online car forums would have shown that Porsche's alleged public declaration of a "fix" was false or misleading.

In short, both Plaintiffs were aware of the facts necessary to timely file their FDUTPA claim. Both Plaintiffs experienced epoxy adhesive failures in their vehicles (*i.e.* the alleged Defect). Then, long before the statute of limitations expired, both Plaintiffs had access to the ODI Resume, in which, according to the Plaintiffs, Porsche declared the alleged Defect "fixed"; both Plaintiffs had access to online car forums that had numerous consumer complaints about the cooling systems in Porsche vehicles; and both were told by Porsche authorized repair centers that there was no a common defect (collectively, unfair and deceptive trade practices). With these facts known by or available to the Plaintiffs, they could have filed a complaint against Porsche alleging unfair and deceptive trade practices. Instead, the Plaintiffs sat on their claims until after the statute of limitations expired; they cannot now allege that the factual basis for their claim was shrouded under a veil of fraud.

The bottom line is that "[f]raudulent concealment requires the defendants to engage in the willful concealment of the cause of action *using fraudulent means to achieve that concealment.*" *Raie*, 336 F.3d at 1282 n.1 (emphasis added) (citing *Berisford*, 667 So. 2d at 811–12). At most, even when taking all the allegations as true and construing them in the light most favorable to the Plaintiffs, the allegations amount to mere "inaction"—which is "wholly insufficient" to constitute "active and willful concealment." *Heuer*, 2017 WL 3475063, at *3 (quoting *Licul*, 2013 WL 6328734, at *6).

For all these reasons, the Court finds that the Plaintiffs fail to meet their burden of alleging, with sufficient particularity, that Porsche used fraudulent means to willfully conceal causes of action from the Plaintiffs. Therefore, the Motion to Dismiss is **GRANTED** as to Count I.

B. <u>**COUNT II – DECLARATORY RELIEF**</u>

In Count II, Plaintiffs seek declaratory relief under the Declaratory Judgment Act. Declaratory relief is a procedural device that "depends on an underlying substantive cause of action and cannot stand on its own." *Eveillard v. Nationstar Mortg. LLC*, Case No. 14-61786, 2015 WL 127893, at *9 (S.D. Fla. Jan. 8, 2015) (citations omitted). Since the Plaintiffs' substantive cause of action has been dismissed, their claim for declaratory relief must also be dismissed. *See Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1199 (S.D. Fla. 2017) (dismissing declaratory relief claim where all substantive claims were dismissed) (citing *Eveillard*, 2015 WL 127893, at *9). Accordingly, the Motion to Dismiss is **GRANTED** as to Count II as well.

C. <u>**DISMISSAL WITHOUT PREJUDICE**</u>

The Eleventh Circuit has "never required district courts to grant counseled plaintiffs more than one opportunity to amend a deficient complaint." *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925, 930 (11th Cir. 2016). Nor has the Eleventh Circuit "concluded that dismissal with prejudice is inappropriate where a counseled plaintiff has failed to cure a deficient pleading after having been offered ample opportunity to do so." *Id.*

Here, the Court previously identified several shortcomings in the initial complaint. *See Padilla*, 391 F. Supp. 3d at 1113–15. The Complaint here recasts the previous theory of fraudulent concealment, but still fails to allege with sufficient particularity that Porsche "engage[d] in the willful concealment of the cause of action using fraudulent means to achieve that concealment." *Raie*, 336 F.3d at 1282 n.1 (citing *Berisford*, 667 So. 2d at 811–12). Thus, the Complaint still falls remarkably short of salvaging the FDUTPA claim from the statute of

- 13 -

limitations bar. Even though Porsche requests dismissal with prejudice, the Court will grant the Plaintiffs one more opportunity to sufficiently allege fraudulent concealment with particularity; but failure to do so after a third attempt will result in dismissal *with* prejudice.

## IV. <u>CONCLUSION</u>

For all these reasons, it is

**ADJUDGED** that Porsche's Motion to Dismiss **(D.E. 33)** is **GRANTED IN PART**. The Complaint **(D.E. 32)** is **DISMISSED *WITHOUT* PREJUDICE**. Should the Plaintiffs amend their complaint a second time, they must do so **no later than Friday, April 17, 2020**. Failure to file an amended complaint will result in dismissal *with* prejudice.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 24th of March 2020.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record